# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

DONALD L. BOSS, JR.,

          Petitioner,

vs.

NICK LUDWICK,

          Respondent.

No. C 11-4014-MWB

**MEMORANDUM OPINION AND ORDER REGARDING THE PARTIES' OBJECTIONS TO A MAGISTRATE JUDGE'S RECOMMENDATION FOR DISPOSITION ON THE MERITS**

_____

## TABLE OF CONTENTS

I.    **INTRODUCTION**..................................................................... 4
    A.    *Factual Background* ................................................. 4
        1.    *The murder and disposal of the body*.................... 4
        2.    *Disclosure of the location of the body*................ 6
    B.    *Procedural Background* ........................................... 8
        1.    *State proceedings* ............................................. 8
            a.    *Conviction and direct appeal*...................... 8
            b.    *Post-conviction relief proceedings* .............. 8
                i.    *The district court's decision* .................. 8
                ii.    *The appellate court's decision*......................... 15
        2.    *Federal Proceedings* ...................................... 18
            a.    *Boss's § 2254 Petition*.......................... 18
            b.    *Proceedings on the merits* ...................... 20
            c.    *Objections to the recommended disposition* ................. 26

II.    **LEGAL ANALYSIS** ................................................ 27
    A.    *Review Of A Report And Recommendation*................................. 27
        1.    *The applicable standards*................................... 27
        2.    **De novo** *review* ......................................... 28
        3.    *"Clear error" review*...................................... 29
    B.    *The Nature Of Boss's Constitutional Claims*................................ 30

        1.     *Boss's pertinent objections* ............................................. 30

        2.     *The underlying constitutional claims* ................................. 30

              a.     *The claims as pleaded and briefed* ........................... 30

              b.     *Judge Strand's interpretations* ................................. 31

        3.     *Analysis of Boss's objections to the nature of his constitutional claims* ................................................... 32

              a.     *Boss's Objection 1* ................................................ 32

              b.     *Boss's Objection 5* ................................................ 34

   C.     *The Nature Of Boss's Federal Habeas Claims* ............................ 35

        1.     *Federal habeas review of a state conviction* ........................ 36

               a.     *"Exhausted" and "adjudicated" claims* ..................... 36

              b.     *The "adjudicated on the merits" requirement* ............. 38

               c.     *The § 2254(d)(1) standards* ................................... 40

                    i.     *The "contrary to" clause* ............................... 41

                    ii.     *The "unreasonable application" clause* ............. 42

               d.     *The § 2254(d)(2) standard* .................................... 42

               e.     *The effect of deficiencies in the state court decision* ........................................................... 43

               f.     **De novo** *review of issues not reached by the state court* ...................................................... 44

        2.     *Boss's federal habeas claims* ....................................... 45

   D.     **Boss's Objections To The Disposition Of His Claims** .................... 46

        1.     *"Clearly established federal law" for "ineffective assistance" claims* ................................................... 47

               a.     **Strickland's** *"deficient performance" prong* ............... 49

              b.     **Strickland's** *"prejudice" prong* ............................. 51

        2.     *The rationale for the state court's decision* ........................ 54

               a.     *"Deficient performance"* ...................................... 55

                    i.     *Boss's Objection 3 as to "performance"* ........... 55

                    ii.     *Boss's Objection 4* ...................................... 58

               b.     *"Prejudice"* ...................................................... 68

                    i.     *Boss's Objection 2 and Objection 3 as to "prejudice"* ............................................. 68

                    ii.     *Analysis* .................................................. 68

   E.     *The Respondent's Objection To The Finding Of "Prejudice"* ...................................................... 70

III.     *CONCLUSION* ........................................................... 71

In this *habeas* action pursuant to 28 U.S.C. § 2254, the petitioner challenges his state conviction for the first-degree murder of his foster son. The petitioner contends that his trial counsel provided ineffective assistance by inadequately advising him about disclosing the location of the murdered child's body, then disclosing the location of the body—buried in the basement of the petitioner's house in a hole cut in the concrete slab, refilled with concrete, and covered with a carpet—during a bond review hearing. At least three previous searches of the petitioner's house had not revealed the location of the child's body. A magistrate judge recommended that the petitioner's § 2254 petition be denied, because the petitioner had failed to prove that his trial counsel's performance was deficient, although the magistrate judge concluded that the petitioner had proved that prejudice resulted from disclosure of the location of the body. The respondent has objected to the magistrate judge's conclusion that the petitioner has shown prejudice from his trial counsel's disclosure of the location of the body. The petitioner has objected to the magistrate judge's recommendation to deny his § 2254 petition, arguing that this court should find that he has proved both deficient performance of his trial counsel and resulting prejudice. These objections have triggered my *de novo* review of parts of the report and recommendation.

# I.    INTRODUCTION

## A.    *Factual Background*

As Magistrate Judge Leonard T. Strand noted in his Report and Recommendation, absent rebuttal by clear and convincing evidence, I must presume that any factual determinations made by the Iowa courts were correct. 28 U.S.C. § 2254(e)(1); *see Bell v. Norris*, 586 F.3d 624, 630 (8th Cir. 2009) (a federal court must deem factual findings by the state court to be presumptively correct, subject to disturbance only if proven incorrect by clear and convincing evidence). Therefore, because there are no objections to the findings of fact by the Iowa courts concerning his conviction, I will adopt those findings.

### 1.    *The murder and disposal of the body*

On petitioner Donald L. Boss's direct appeal of his conviction, the Iowa Court of Appeals summarized the facts leading to his conviction, as follows:

> Donald and Lisa Boss adopted Timothy in Michigan before moving to Remsen, Iowa. Timothy was a special needs child, and the Bosses received subsidies from the State of Michigan for his care.
>
> On January 2, 2002, the Plymouth County Sheriff's Department received a request from authorities in the State of Michigan to check on Timothy's welfare. Deputies Bartolozzi and TeBrink went to the Boss residence where Lisa Boss told them Timothy was living in Kentucky with her sister. Lisa Boss's sister revealed Timothy was not with her and she had not seen him in a year and a half.
>
> Sheriff's deputies returned to the Boss home that night and found Lisa and the children were gone. Donald Boss was at the residence and agreed to speak with the deputies. Boss informed them Timothy had caused a great deal of trouble in the family and his wife had decided to return to Michigan with Timothy. At the end of the interview, Boss stated, "Guess I bought a year and a half

and it's over. My life's over now." Boss agreed to return to the sheriff's office with the deputies.

On the trip to the sheriff's office, Boss made several incriminating statements. He admitted the version of events he had given at his home was not the truth. He said Timothy had fallen and hit his head, but the fall had not killed him. He said Timothy's death was not accidental. Boss admitted to beating Timothy and stated he thought he may have given Timothy an overdose of Doxil, a drug used for the treatment of Attention Deficit Disorder. Boss was later charged with murder.

On February 25, 2002, a hearing was held on Boss's request for a reduction in bond. Boss's counsel presented to the State's attorneys a typewritten statement signed by Donald Boss. It said Timothy's body was under the floor in the basement of the Boss family home and it granted the State permission to take whatever steps were necessary to retrieve the body. State authorities broke through the concrete flooring and discovered Timothy's decomposed body wrapped in a blanket. Because there was very little soft tissue on the body, no specific cause of death could be determined. There were, however, signs of prior injuries to the bones of the arms and teeth. A small bone in Timothy's left hand had been broken.

Timothy's brothers, Claxton and Roman, testified at Donald Boss's murder trial. They stated Timothy was disciplined for attempting to escape a locked room through a hole he had punched in the wall. Timothy was then tied to an orange folding chair with plastic ties. A plastic tie was also placed around Timothy's neck and attached to a shelf. Timothy was then beaten with a wooden paddle or board. Timothy was then left tied to the chair. When Donald Boss cut Timothy from the chair hours later, Timothy slumped to the floor. Attempts to revive Timothy failed. Timothy was then taken upstairs and placed in a bathtub of cold water.

The evidence also revealed Donald Boss rented a cement saw, cut a hole in the basement floor, and buried Timothy. He then poured a concrete slab and covered it with carpet. Boss told the members of the family he had taken Timothy back to Michigan. He filed a report with the State of Michigan to continue to receive subsidies for his adoption.

*State v. Boss*, 796 N.W.2d 458, 2004 WL 137627, *1-2* (Iowa Ct. App. Jan. 28, 2004) (slip op.).

### 2. *Disclosure of the location of the body*

Neither of the parties has objected to Magistrate Judge Leonard T. Strand's recitation in his Report and Recommendation (docket no. 63) of the factual background to the disclosure of the location of the murdered child's body during Boss's pretrial bond hearing. Therefore, I will repeat here Judge Strand's recitation of that background:

> The factual background arises from a bond review hearing conducted on February 25, 2002. Boss was represented by Michael Williams, an assistant public defender. Transcript of Bond Hearing (Bond Tr.) 2. At the hearing, Boss' mother and father testified about their ability to pay his bond. Bond Tr. 2-6. Boss testified about his current living situation and his employment history. The hearing then took a drastic turn:

> | Williams: | Do you have a pretty steady employment history? |
> |---|---|
> | Boss: | I've never been without a job. |
> | Williams: | Did you sign this document directing the authorities to the location of the body of Timothy Boss? |
> | Boss: | Yes, I did. |
> | Williams: | Thank you. That's all I have. |

Bond Tr. 8. After taking a moment, Charles Thoman, assistant attorney general, proceeded with cross-examination.

> Thoman: Mr. Boss, I've just been handed a statement from your lawyer that says, in the middle of the floor of the basement room at 602 Fulton Street, Remsen, Iowa, with the door that leads outside, that's where the body of Timothy Boss is located. Is that what this statement says?
>
> Boss: Yes, it is.
>
> Thoman: And this is your signature on it dated 2-25-02?
>
> Boss: Yes, it is.
>
> Thoman: Did you put him under the floor in that location?

Bond Tr. 8-9. Williams objected on grounds that the question was beyond the scope of direct examination. Bond Tr. 9. The judge then suggested that Boss could decide not to answer based on his right against self-incrimination. Boss ultimately invoked his Fifth Amendment right after his attorney advised him to do so. Bond Tr. 9-10. Thoman then raised the issues of whether Boss waived that right by testifying and whether the court would consider his invocation of the Fifth Amendment in deciding whether to reduce his bond. Bond Tr. 11. The judge stated: "The defendant's decision to invoke his Fifth Amendment right is a factor the court is going to consider in determining whether or not the bond should be reduced or modified." *Id*. Williams responded by stating: "Your Honor, I will take exception to the court's ruling. The Fifth Amendment is to protect the guilty as well as the innocent." *Id*.

Thoman then asked Boss if he intended to invoke his Fifth Amendment right to any and all questions he would

ask. Bond Tr. 12. Boss responded that he would answer questions that would not incriminate him. Thoman then asked Boss if he killed Timothy Boss. Williams objected but Boss answered "No, I didn't." *Id*. Thoman asked: "Did you hide his body in the middle of the floor in the basement room at 602 Fulton Street, Remsen, Iowa[?]" *Id*. Boss responded by invoking the Fifth Amendment. Bond Tr. 13. Thoman ultimately moved to continue the hearing to allow briefing of the Fifth Amendment issue. Williams did not object and the court granted the motion. Bond Tr. 13-14.

Report and Recommendation (docket no. 63), 4-5.

## B.    *Procedural Background*

### 1.    *State proceedings*

#### a.    *Conviction and direct appeal*

On December 12, 2002, Boss was convicted by a jury, in the Iowa District Court for Plymouth County, of the first-degree murder of his son, Timothy, in violation of IOWA CODE § 707.2. On December 16, 2002, he was sentenced to life imprisonment without possibility of parole. He appealed. On January 28, 2004, the Iowa Court of Appeals affirmed Boss's conviction, but preserved the issue of trial counsel's claimed ineffective assistance regarding disclosure of the location of Timothy's body for post-conviction review to allow for further development of the record. *See Boss*, 796 N.W.2d 458, 2004 WL 137627 at \*3. Boss sought further review of his direct appeal by the Iowa Supreme Court, but that request was denied on April 23, 2004, and his conviction became final on April 28, 2004.

#### b.    *Post-conviction relief proceedings*

##### i.    *The district court's decision*

On March 11, 2005, Boss filed an application for post-conviction relief in the Iowa District Court for Plymouth County. After an evidentiary hearing at which both

Boss and his lead trial counsel, Mike Williams,[1] testified, Iowa District Judge Gary Wenell denied Boss's application in a Ruling On Applicant's Application For Post-Conviction Relief (Post-Conviction Relief Ruling), signed on August 27, 2008, and filed on August 28, 2008. *See* Respondent's Appendix (docket no. 51-1), 12-35. In the pertinent part of his Findings Of Fact, Judge Wenell found the following:

> Williams was placed in charge of Boss' case. Williams had experience with murder cases in the past and had worked both as defense counsel and as a prosecutor. Williams had previously asked the county attorney's office whether the disclosure of Timothy's body would yield any kind of reciprocation in terms of plea bargains or other deals. However, the county attorney had not yet offered any deal and Williams states he believed no deal was imminent based on the prosecution's reaction to these offers. According to Boss, Williams was very concerned about "untruthful" things being said by Lisa Boss [Boss's wife, who was also charged with crimes related to the murder, but represented by separate counsel] that were ending up in the media. Williams testified he was concerned that Lisa Boss could not be controlled and that a disclosure of the body might deter her from making more statements and possibly implicate her in the crime.

> On February 25, 2002, a bond reduction hearing was held for Boss. At this time, a letter signed by Boss disclosing the location of the body was handed to prosecutors by Williams. Upon receiving the note, prosecutors contacted law enforcement who conducted a fourth search whereupon Timothy's body was located. In addition, further evidence was found including evidence that Boss had leased the cement saw. This evidence was introduced against Boss at trial.

---

[1] Boss's other trial counsel was Greg Jones. Both Williams and Jones were from the Iowa Public Defender's Office. Post-Conviction Relief Ruling, 3-4 (Respondent's Appendix, 14-15).

Post-Conviction Relief Ruling at 4 (Respondent's Appendix at 15) (footnote omitted).
Judge Wenell also noted, "Boss testified at hearing that he believed the evidence [of the
location of the body] might have been used to reduce his bond." *Id*. at 4 n.2
(Respondent's Appendix at 15).

In the pertinent part of his Conclusions Of Law, Judge Wenell first summarized
Boss's argument on the pertinent ineffective assistance claims, as follows:

> The main contention of Donald Boss deals with the
> disclosure of the location of Timothy's body by a signed
> letter at his reduction in bond hearing. It is undisputed that
> Boss' legal defense team advised him that disclosing the
> location of the body via a map and signed letter was the
> correct action to take. The body was subsequent[ly]
> recovered, tested and used in the State's case against him.
> Boss contends this disclosure hurt his case more than any
> other error alleged against his trial counsel. He contended
> at hearing that disclosing the body effectively handed the
> State a key piece of evidence that eliminated several possible
> defenses, and that the action had no real strategic value as he
> believes the body provided nothing that aided his case.

Post-Conviction Relief Ruling at 17-18 (Respondent's Appendix at 28-29).

After this summary of Boss's arguments, Judge Wenell considered the
"prejudice" prong of Boss's claim of ineffective assistance of counsel, as follows:

> The disclosure of the dead body by a criminal
> defendant accused of murder without receiving any form of
> cooperation from the prosecuting attorneys is an unusual
> step. Williams acknowledges that this strategy was "outside
> of the box" and Jones acknowledged on deposition he was
> told by a supervisor that such a move was a "gutsy strategy"
> and that the supervisor "wished them luck." The Court is
> convinced that the disclosure of the body was an action that
> many other attorneys would not take. *However, the question
> is whether this "gutsy" disclosure resulted in ineffective
> assistance of counsel under the two prong test*. Despite the
> State's assertions at the hearing, it seems difficult to imagine

a trial without the body. While the State argues that the body itself did not provide much evidence, there is no telling how much the discovery of the body impacted every facet of the trial, from various implications arising from Boss' burial of the child; evidence concerning his actions following the death of Timothy Boss; and even the impact of the discovery of the body on other witnesses. In addition, Boss is correct in stating that a disclosure of the body resulted in the foreclosure of some defenses that could have been used at trial. Also, the closing argument at trial refers to evidence produced or aided by the discovery of the body on numerous occasions. *Unlike most of Boss' other arguments, it is clear the lack [sic: disclosure?] of a body may have resulted in significant prejudice at trial. However it also clear that the test for ineffective assistance of counsel is a two-prong test. Prejudice is the second factor to be weighed and it only needs to be addressed if counsel's conduct essentially resulted in the failure of an essential duty by failing to act as a reasonable attorney would. To discover whether Boss' defense team was truly ineffective, the Court must review the overall trial strategy as explained to the Court.*

Post-Conviction Relief Ruling at 18-19 (Respondent's Appendix at 29-30) (emphasis added).

Turning to the "deficient performance" prong of an ineffective assistance of counsel claim, Judge Wenell explained, "According to Williams, his actions were a legitimate trial strategy." *Id*. at 19 (Respondent's Appendix at 30). Judge Wenell then explained, in more detail than I will provide here, the "strategic" reasons for Williams's actions, as the following:

- Williams believed that "disclosure of the body would be useful in demonstrating Boss's cooperation to a jury";

- Williams believed that disclosure of the body "could be used to shift the blame for the death to Lisa Boss," because it would allow location of

"cigarette butts which could have been used to tie Lisa Boss to the crime scene and the burial," even though no cigarette butts were ultimately found during the recovery of the body, where Williams's strategy "from the outset . . . was to blame Lisa";

- Williams was afraid Lisa would cooperate "and receive whatever benefits arose from disclosure of the body";

- Williams was concerned that Lisa "was uncontrollable and giving false statements to officers, and that these potentially damaging false statements were part of the press coverage";

- Williams was "concern[ed] that Lisa Boss's legal counsel would seek a deal";

- Williams believed that "evidence from the body that was negative to their legal strategy would have deteriorated over time [but] that positive evidence supporting his theory of accidental overdose may have been preserved";

- Williams believed "that a disclosure of the body would help Boss' standing in the community and with the press," because "it would make him appear to be cooperating with the investigation," and he "believed that the public would not necessarily believe that simply because Boss buried Timothy that Boss had killed Timothy"; and

- Williams believed "the body would have been discovered by investigators at some point."

Post-Conviction Relief Ruling at 19-21 (Respondent's Appendix at 30-32).

Judge Wenell did not buy all of these rationales, but he nevertheless concluded that Boss's trial counsel had a legitimate trial strategy:

The Court is not convinced that all of these rationales by themselves would have supported a disclosure of the body. It is hard to say that the body would have been "inevitably" discovered when all previous searches had not yielded any evidence of Boss' conduct in burying Timothy beneath the basement floor. Boss' contention that he thought part of the reason for disclosure was [a] possibility of lowering of [his] bond during the bond review hearing also does not seem very likely considering the circumstances. Also, the Court is not convinced that any positive publicity would occur due to disclosure of the body. However, not all of the legal team's rationales need to have been logical and legitimate tactics. The question is whether any or all of the rationales would result in a competent attorney finding disclosure of the body was a part of a legitimate trial strategy. The Court believes it can be viewed as a legitimate trial strategy.

Post-Conviction Relief Ruling at 21 (Respondent's Appendix at 32).

Judge Wenell then rejected Boss's argument that he had an agreement with Lisa that he would take the blame for Timothy's disappearance, so that she would never disclose the location of Timothy's body. Judge Wenell found "problems with the alleged rock-solid nature of this agreement," in light of concerns about Lisa's comments to authorities and others and Lisa's representation by separate counsel who had not been persuaded to cooperate in a joint defense. *Id*. at 21-22 (Respondent's Appendix at 32-33). Judge Wenell noted,

Boss gave his consent to Williams for disclosure of the body though he now thinks such consent was unwise. He states he communicated to his counsel that he believed Lisa would never disclose the location of the body, but knew that one of the reasons for Williams' proposed action was to get Lisa to "quit talking" and that this tactic worked "for a while." Hearing Transcript P. 91-92). Boss also indicates that Lisa was making statements that were entirely untrue and had nothing to do with the crime, indicating he was also not

happy with the statements she was making and that he was not entirely in control of that situation. The Court is simply not convinced that [B]oss or Williams knew for certain that Lisa Boss would not damage their case or attempt to negotiate a deal for herself. It appears there was some justified concerns on the part of the defense team that she might have cooperated despite the alleged agreement.

Post-Conviction Relief Ruling at 22 (Respondent's Appendix at 33).

Judge Wenell concluded his analysis of Boss's ineffective assistance of counsel claim, as follows:

What the defense team has presented to the Court is an overall strategy focused on blaming or at least raising significant questions about the involvement of Lisa Boss in Timothy's death. It appears that evidence they hoped would support that theory would have been located when the body was discovered. This evidence included the cigarette butts; evidence that Timothy died as a result of an overdose; and the general implication that Boss was cooperating by providing the body. In addition, they were trying to "freeze" Lisa Boss' damaging statements, a tactic that even Boss stated was effective for a bit. *The fact these theories were not successful in securing an acquittal for Boss does not necessarily mean they were ineffective. The fact that other lawyers may have decided not to reveal such a piece of evidence does not mean trial counsel was acting incompetently. Trial counsel is only ineffective when their conduct is so egregious that they failed an essential duty. The Court does not believe this is such a case. The legal defense team had a strategy, though admittedly a novel one, to disclose the body to help with their overall strategy of placing the blame on parties or events other than Boss. The Court, after hearing the defense team's rationale for their actions believes they had a legitimate strategy in mind, though it also believes such a strategy may have been misguided.* A trial strategy that is reasonable, though imperfect and ultimately unsuccessful is not ineffective assistance of counsel. *State v. Johnson*, 604 N. W.2d 669,

14

673 (Iowa Ct. App. 1999). "Improvident trial strategy or miscalculated tactics do not necessarily constitute ineffective assistance of counsel." *Wemark v. State*, 602 N.W.2d 810, 814 (quoting *State v. Aldape*, 307 N.W.2d 32, 42 (Iowa 1981)).

> *The Court realizes this piece of evidence could have significantly changed the trial at numerous stages, but prejudice only becomes a factor when the legal strategy is so misguided that it cannot be truly be [sic] called a legitimate legal strategy. The Court believes that under a preponderance of the evidence standard, Williams and Jones have shown enough evidence that they made a tactical decision in support of a legal strategy that could have been aided by the disclosure of the body. The fact that this legal strategy may have backfired does not render their assistance ineffective.*

Post-Conviction Relief Ruling at 22-23 (Respondent's Appendix at 33-34) (emphasis added). Judge Wenell then denied Boss's application for post-conviction relief.

### *ii.* **The appellate court's decision**

Boss appealed the denial of his application for post-conviction relief, but the Iowa Court of Appeals affirmed on August 11, 2010. *See Boss v. State*, 789 N.W.2d 165, 2010 WL 3155198 (Iowa Ct. App. 2010) (slip op.). More specifically, the Iowa Court of Appeals provided the following succinct analysis of Boss's ineffective assistance of counsel claim concerning disclosure of the location of the body:

> This issue was preserved for postconviction proceedings in the direct appeal because the record was inadequate to address it. Both Boss and trial counsel testified in the postconviction proceedings. Trial counsel's strategy was succinctly stated, "Blame Lisa" (Boss's wife).
>
> *The court observed the disclosure "may have resulted in significant prejudice at trial," but resolved the claim by finding the attorneys "have shown enough evidence that they made a tactical decision in support of a legal strategy that*

*could have been aided by the disclosure of the body."* The court reasoned:

> What the defense team has presented to the court is an overall strategy focused on blaming or at least raising significant questions about the involvement of Lisa Boss in Timothy's death. It appears that evidence they hoped would support that theory would have been located where the body was discovered. This evidence included [Lisa's] cigarette butts; evidence that Timothy died as a result of an overdose [Lisa administered all drugs]; and the general implication that Boss was cooperating by providing the body. In addition, they were trying to "freeze" Lisa Boss's damaging statements, a tactic that even Boss stated was effective for a bit. The fact these theories were not successful in securing an acquittal for Boss does not necessarily mean they were ineffective. The fact other lawyers may have decided not to reveal such a piece of evidence does not mean trial counsel was acting incompetently. Trial counsel is only ineffective when their conduct is so egregious that they failed an essential duty. The court does not believe this is such a case. The legal defense team had a strategy, though admittedly a novel one, to disclose the body to help with their overall strategy of placing the blame on parties or events other than Boss. The court, after hearing the defense team's rationale for their actions believes they had a legitimate strategy in mind, though it also believes such a strategy may have been misguided. A trial strategy that is reasonable, though imperfect and ultimately unsuccessful is not ineffective assistance of counsel.

The test for ineffective assistance of counsel focuses on whether counsel's performance was reasonably effective. *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). The defendant must prove counsel's performance fell below an objective standard of reasonableness so that counsel failed to fulfill the

adversarial role the Sixth Amendment envisions. *Id.*, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. A strong presumption exists that counsel's performance fell within the wide range of reasonable professional assistance. *Wemark v. State*, 602 N.W.2d 810, 814 (Iowa 1999). *The defendant has the burden of proving both elements of his ineffective assistance claim by a preponderance of the evidence. Ledezma [v. State]*, 626 N.W.2d [134,] 145 [(Iowa 2001)]. We presume the attorney performed competently, and the applicant must present "an affirmative factual basis establishing inadequate representation." *State v. Oetken*, 613 N.W.2d 679, 683 (Iowa 2000). "Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel." *Ledezma*, 626 N.W.2d at 143.

Boss asserts, "There is no rational explanation, strategic or tactical, for the disclosure of the burial site of Timothy during [the bond review] proceeding and in this manner." We, like the postconviction court, disagree. *It is clear from the record that defense counsel was concerned that Lisa would reveal the location of the body. Counsel also was concerned about the media coverage of the case and Lisa's statements in the media. We conclude there was a rational explanation for disclosing the location of the body as quickly as possible to "beat [Lisa] to the punch." While the ultimate effect of revealing the location of Timothy's body may have been prejudicial to Boss's defense, we agree with the postconviction court that defense counsel had a "legitimate strategy in mind" that was based on extensive experience, considered deliberation, discussion with the defendant, and the unfolding circumstances as the case proceeded. This is not a failure in an essential duty. Boss has not overcome the strong presumption that his counsel's performance fell within the wide range of reasonable professional assistance. See Strickland*, 466 U.S. at 689–90, 104 S.Ct. at 2065–66, 80 L.Ed.2d at 693–94.

Boss further asserts the disclosure "raises serious questions concerning disclosure of privileged communi-

cations." The record shows that defense counsel had Boss disclose the location of the body only with his informed consent. There was discussion about the disclosure but there was no disclosure until the final agreement by Boss. Boss acknowledged considerable discussion and acknowledged eventually being convinced. He conceded consenting to the disclosure based on the advice of counsel, even though he now claims to have doubted the rationale. Boss's citation to *State v. Wemark*, 602 N.W.2d 810 (Iowa 1999), is inapposite. In *Wemark*, counsel's tactical decisions were based on a faulty premise that disclosure was required under the Iowa Code of Professional Responsibility in effect at the time. *See Wemark*, 602 N.W.2d at 816–17 (discussing the relevant ethical and legal obligations and counsel's mistake). "Wemark was informed by his defense counsel that the location of the knife must be disclosed, and tactics were developed as a means to deal with the disclosure." *Id.* at 817. In the case before us, however, counsel correctly understood the relevant law and ethical rules. *Disclosure was a voluntary, informed, considered, tactical action. We conclude the disclosure of the location of the body was not ineffective assistance. See Ledezma*, 626 N.W.2d at 145 (disposing of an ineffective-assistance claim upon lack of proof of either prong).

*Boss*, 789 N.W.2d 165, 2010 WL 3155198 at *2-*3 (emphasis added).

The Iowa Supreme Court denied further review on October 21, 2010, and *procedendo* on the denial of post-conviction relief issued on November 8, 2010.

## 2. *Federal Proceedings*

### a. *Boss's § 2254 Petition*

On November 15, 2010, Boss commenced this federal action for *habeas* relief by filing a *pro se* Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (§ 2254 Petition) (docket nos. 1 and 9) in the United States District Court for the Southern District of Iowa. However, on January 20, 2011, this

action was transferred to this district, which includes the county where Boss was convicted. *See* Order Transferring Case (docket no. 4).

Boss originally asserted five grounds for § 2254 relief. Ground One alleged that counsel provided ineffective assistance by disclosing the location of the victim's body during a bond review hearing. Ground Two alleged that counsel provided ineffective assistance by failing to investigate inconsistences in the statements of Boss's children (specifically, Boss's son, Claxton) and by failing to secure or investigate a tape recording of Boss's statement to Officer Bartolozzi, purportedly made while Officer Bartolozzi was transporting Boss to the station. Ground Three alleged that counsel provided ineffective assistance by failing to object to numerous uses by the prosecution in its closing argument of the word "liar" to describe Boss. Ground Four alleged prosecutorial misconduct when the prosecutor waved a fist up against pictures of the skeleton of the victim, used the word "liar" multiple times, and substituted his opinions for facts, prejudicing Boss's ability to receive a fair trial. Ground Five alleged a constitutional violation arising from the Iowa Supreme Court's subsequent redefinition of the felony murder rule, in *State v. Heemstra*, 721 N.W.2d 549 (Iowa 2006), in such a way that it would not have supported a conviction in Boss's case.

In an Initial Review Order (docket no. 8), then-Chief United States Magistrate Judge Paul A. Zoss directed the respondent to file an answer to Boss's § 2254 Petition and directed the Clerk of Court to appoint an attorney to represent Boss in this matter. The respondent filed his Answer (docket no. 15) on May 2, 2011, asserting, *inter alia*, that Grounds Two and Five of Boss's § 2254 Petition were procedurally defaulted. Judge Zoss then set a briefing schedule on the merits of Boss's claims by Order (docket no. 16), filed on May 3, 2011.

Boss did not file a brief on the merits. Instead, on December 15, 2011, Boss filed, through counsel, a Motion To Stay Proceedings Pending Exhaustion Of State

Proceedings (Motion To Stay) (docket no. 29). In his Motion To Stay, Boss acknowledged that Grounds Two and Five of his Petition were not exhausted, but argued that this action should be stayed to allow him to attempt to exhaust those claims in state court, while maintaining the timeliness of his other claims for federal relief. The respondent filed a Resistance (docket no. 30), arguing that a stay was inappropriate. On January 20, 2012, Judge Zoss heard oral arguments on Boss's Motion To Stay. On February 28, 2012, Judge Zoss filed a Report and Recommendation (docket no. 35) recommending that Boss's Motion To Stay be denied, that Grounds Two and Five be dismissed with prejudice, and that, if I accepted the Report and Recommendation, Boss should be ordered to brief the merits of the remaining grounds for relief within 30 days. On March 21, 2012, after an extension of time to do so, Boss filed his Objections To Report And Recommendation (docket no. 40). In a Memorandum Opinion And Order (docket no. 41), filed May 1, 2012, I denied Boss's Motion To Stay (docket no. 29); dismissed Ground Two of his § 2254 Petition, with prejudice, as procedurally defaulted; dismissed Ground Five of his § 2254 Petition, with prejudice, as without merit; and granted Boss to and including May 31, 2012, to file a brief on the merits of Grounds One, Three, and Four of his § 2254 Petition. *See Boss v. Ludwick*, 863 F. Supp. 845 (N.D. Iowa 2012).

### b.     *Proceedings on the merits*

After an extension of time to do so, Boss filed his Merits Brief (docket no. 44) on June 15, 2012. In his Merits Brief, Boss explained that he was proceeding only on Ground One of his Petition, concerning ineffective assistance of counsel relating to the disclosure of the body, because he believed that Grounds Three and Four did not present claims cognizable in *habeas* proceedings. After an extension of time to do so, the respondent filed his Merits Brief (docket no. 51) on September 5, 2012, to which he attached an Appendix (docket no. 51-1), consisting of the decision of the Iowa Court of

Appeals on Boss's direct appeal; the decision of the Iowa District Court on Boss's post-conviction relief application; and the decision of the Iowa Court of Appeals on Boss's appeal of the denial of his post-conviction relief application. Boss filed a *Pro Se* Response To Respondent's Merits Brief (docket no. 55) on September 18, 2012, and his counsel a Reply Brief (docket no. 60), to which counsel attached another copy of Boss's *Pro Se* Response To Respondent's Merits Brief (docket no. 60-1).

On February 19, 2013, Magistrate Judge Leonard T. Strand, who has succeeded Judge Zoss, filed a Report And Recommendation On Petition For Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (docket no. 63). In his Report And Recommendation, Judge Strand first provided factual and procedural background from the decision of the Iowa Court of Appeals on direct appeal and concerning Boss's bond review proceedings, at which his trial counsel disclosed the location of the body, as I have also set out in full above. Judge Strand understood Boss to allege ineffective assistance of counsel "based on his attorney's advice to disclose the location of the body and allegedly-inadequate consultation by his attorney prior to Boss giving consent." *Id.* at 5-6. Judge Strand also explained, in a footnote,

> In his briefing, Boss is also critical of his trial counsel for (a) stating during the bond hearing that "the Fifth Amendment is to protect the guilty as well as the innocent" and (b) failing to advance the "blame Lisa" theory during that hearing. Boss did not raise these as separate grounds for relief, instead briefing only Ground One, entitled "Ineffective Counsel Based Upon Trial Counsel's Recommendation To Disclose Location Of Body During A Bond Hearing." Doc. No. 44-1 at 3, 34-35. In any event, I find that these other alleged errors are not so "egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair" or "so prejudicial as to amount to a denial of due process." *Garcia v. Mathes*, 474 F.3d 1014, 1017 (8th Cir. 2007). As such, I will not address them separately.

Report and Recommendation at 6 n.1. Judge Strand then stated the standard of review under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Id*. at 1-8.

In the part of his Discussion concerning the merits of Boss's claim, Judge Strand stated, "Both state courts either found, or at least assumed, that Boss established the prejudice element, instead denying Boss' petition on the issue of deficient performance." *Id*. at 9 (footnote omitted). He noted that, because Boss asserted that the Iowa courts had applied the wrong legal standard to the question of "prejudice," proof by a preponderance of the evidence, rather than proof of a reasonable probability of a different result, Boss argued that he was entitled to *de novo* review of the "prejudice" prong of his claim. *Id*. Judge Strand concluded, "Whether the state courts found prejudice or I review the issue *de novo*, Boss has satisfied this element." *Id*. (footnote omitted). Although Judge Strand did not explain the basis for his conclusion that Boss had established the "prejudice" prong of his claim, he explained that Boss's "habeas petition turns on whether the Iowa Court of Appeals unreasonably applied *Strickland* in finding there was no deficient performance." *Id*. at 10.

Turning to the "deficient performance" prong, Judge Strand noted that Boss had made three arguments: (1) that the Iowa District Court created an impermissible "affirmative defense" in finding that the State had proved that the decision to disclose the body was tactical; (2) that the Iowa Court of Appeals unreasonably applied *Strickland* in concluding that his trial counsel's advice to disclose the body was not deficient performance; and (3) that the Iowa Court of Appeals unreasonably applied *Strickland* by focusing on Boss's consent to the disclosure, without adequately considering whether his trial counsel's advice concerning the disclosure was adequate. *Id*. Judge Strand addressed these arguments in turn.

More specifically, Judge Strand rejected Boss's "creation of an affirmative defense" argument for the following reasons:

> Neither [Iowa] court created an "affirmative defense" in finding that the attorneys made a tactical decision and their performance constituted legitimate legal strategy. Although the district court decision could have been better phrased, the court essentially concluded that Boss was not able to rebut the presumption or the evidence that his counsels' performance was within the wide range of reasonable professional assistance. Nothing in the state court opinions suggests the courts found that Boss had actually proved deficient performance, but then relied on an "affirmative defense" of legal strategy to conclude there was no ineffective assistance of counsel. The courts found that there was no deficient performance because there was evidence that the attorneys made a tactical decision which constituted legitimate legal strategy. This is more clearly stated in the Iowa Court of Appeals' decision. Neither court created an "affirmative defense" or unreasonably applied *Strickland* in the manner Boss suggests.

Report and Recommendation at 12.

As to Boss's argument about the adequacy of trial counsel's advice to disclose the location of the body, Judge Strand explained,

> As summarized above, both state courts concluded that there was a legitimate strategy behind counsel's decision to have Boss consent to disclose the location of the body. I find that the Iowa Court of Appeals did not unreasonably apply *Strickland* in reaching this conclusion. At the evidentiary hearing on Boss' PCR action, Boss testified that initially his attorney, Williams, did not want to know the location of the body. PCR Tr. 83. Boss said Williams asked about the location of the body because he thought it could help Boss' case. Boss said Williams convinced him that it was in his best interest to disclose the location of the body and Boss followed Williams' instructions. *Id*.

Report and Recommendation at 14-15. Judge Strand then detailed the parts of the record that he believed showed that Boss understood trial counsel's reasons for

disclosing the body and that Boss had agreed to the disclosure, as well as those parts of the record showing the reasons that his trial counsel gave for the disclosure. *Id*. at 15-17. Judge Strand then concluded,

> I find the state courts did not unreasonably apply *Strickland* in concluding that Boss' attorney had a legitimate strategy in mind when he advised Boss to disclose the location of the body. Boss acknowledged part of that strategy as wanting to dissuade Lisa Boss from communicating with the media. Boss also admitted that Williams had convinced him that disclosing the location of the body was in his best interest. Boss' and Williams' testimony provided a sufficient foundation for the state courts to reasonably conclude that Williams' representation did not fall below an objective standard of reasonableness under *Strickland*.

Report and Recommendation at 17.

Finally, as to Boss's argument that his trial counsel did not adequately consult with him prior to obtaining his consent to the disclosure of the location of the body, Judge Strand observed,

> The only evidence Boss offers to demonstrate there was not informed consent is the bond hearing transcript. He argues the seemingly-chaotic nature of that hearing demonstrates there was not adequate consultation. Boss points out that he had to be advised to invoke the Fifth Amendment while he was on the witness stand and was instructed to do so by Williams only after the presiding judge suggested it. Bond Tr. 9.

Report and Recommendation at 20. Judge Strand then rejected this argument, as follows:

> I find that Boss has not rebutted the presumption given to the state court findings which concluded Boss provided informed consent to the disclosure after considerable discussion with his attorney. As the Iowa Court

of Appeals recognized, Boss stated that his attorney "convinced" him that disclosure was in his best interest, indicating that Boss knew of the risks and weighed the options with the help of his attorney. The chaotic nature of the bond review hearing can be explained by many other factors unrelated to whether Williams adequately consulted with Boss on the issue of whether to disclose the location of the body. This was likely unexpected evidence to everyone but Boss and Williams. Also, the issue of whether Williams adequately prepared Boss for cross-examination and explained his Fifth Amendment right is entirely different than whether Williams adequately discussed the pros and cons of disclosing the body with Boss before he provided consent. Because Boss has not presented clear and convincing evidence to suggest Williams did not adequately consult with him prior to his decision to disclose the body, the state courts' findings on these facts are presumed correct.

The state courts did not unreasonably apply *Strickland* in deciding Williams' representation did not fall below an objective standard of reasonableness. The state courts made factual findings that Boss acknowledged considerable discussion and acknowledged that he was eventually convinced by his attorney to disclose the location of the body. Boss has not provided clear and convincing evidence to rebut this or otherwise show his attorney did not adequately consult with him. I find that the Iowa Court of Appeals did not unreasonably apply *Strickland* in deciding Boss had provided informed consent to disclose the location of the body.

Report and Recommendation 20-21.

Judge Strand then recommended that Boss's § 2254 Petition be denied. *Id*. at 21-22.

### c. *Objections to the recommended disposition*

On March 4, 2013, the respondent filed his Objections To Report and Recommendation On Habeas Corpus Petition (docket no. 64). The respondent explains that he "does not object to the conclusion that the state courts did not unreasonably apply *Strickland* in ruling there was no deficient performance by trial counsel," but "does object to the findings regarding *Strickland* prejudice." Respondent's Objections at 2.

On March 11, 2013, Boss filed his Objections To February 19, 2013, Report and Recommendation (docket no. 66). Boss resisted the respondent's objection on the finding of prejudice, because he believed that all five judges (the three Iowa Court of Appeals judges who considered the post-conviction relief appeal, the Iowa district court judge who denied the post-conviction relief application, and Judge Strand) "correctly found prejudice." Boss's Objections at 1, ¶ 2. Boss also submitted five objections to the Report and Recommendation itself: (1) that Judge Strand improperly concluded, in footnote 1 on page 6 of the Report And Recommendation, that two illustrations of ineffective assistance of counsel concerning disclosure of the body during the bond hearing were separate claims; (2) that Judge Strand failed to find that the Iowa Court of Appeals and the Iowa District Court applied the wrong standard of proof on the "prejudice" prong under *Strickland*; (3) that Judge Strand failed to apply *de novo* review to the "deficient performance" and "prejudice" prongs of the analysis of ineffective assistance of counsel; (4) that Judge Strand erred in failing to find that the Iowa courts' determination that there was no "deficient performance" was both "contrary to" and an "unreasonable application" of clearly established federal law; and (5) that Judge Strand failed to understand that the "informed consent" and "disclosure of the body" issues were one and the same.

## II.     LEGAL ANALYSIS

### A.     *Review Of A Report And Recommendation*

#### 1.     *The applicable standards*

The applicable statute provides for *de novo* review by the district judge of a magistrate judge's report and recommendation, when objections are made, as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. Ia. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). The United States Supreme Court has explained that the statutory standard does not preclude review by the district court in other circumstances, however:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, the specific standard of review may depend upon whether or not a party has objected to portions of the report and recommendation. I will explain what triggers each specific standard of review in a little more detail.

## 2.    De novo *review*

If a party files an objection to a magistrate judge's report and recommendation, the district court must "make a de novo determination *of those portions of the report or specified proposed findings or recommendations to which objection is made*." 28 U.S.C. § 636(b)(1) (emphasis added). In most cases, to trigger *de novo* review, "objections must be timely and specific." *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990). However, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general *pro se* objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and has also been willing to conclude that general objections require "full de novo review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a de novo review would still have been appropriate given such a concise record.").

When objections have been made, and the magistrate judge's report is based upon an evidentiary hearing, "'the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing.'" *United States v. Azure*, 539 F.3d 904, 910 (8th Cir. 2008) (quoting *Jones v. Pillow*, 47 F.3d 251, 252 (8th Cir. 1995), in turn quoting *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989)). Judge Strand did not hold an evidentiary hearing on Boss's § 2254 Petition or hear oral arguments on the merits of Boss's claims. Instead, he considered only the parties' written submissions, and I have done the same.

A district court may also review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Thomas*, 474 U.S. at 154. This discretion to conduct *de novo* review of any issue at any time makes sense, because the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of

substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994).

### 3. *"Clear error" review*

In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150; *see also Peretz v. United States*, 501 U.S. 923, 939 (1991) (stating that § 636(b)(1) "provide[s] for de novo review *only* when a party objected to the magistrate's findings or recommendations" (emphasis added)); *United States v. Ewing*, 632 F.3d 412, 415 (8th Cir. 2011) ("By failing to file objections, Ewing waived his right to de novo review [of a magistrate judge's report and recommendation on a suppression motion] by the district court."). Indeed, *Thomas* suggests that no review at all is required. *Id.* ("We are therefore not persuaded that [§ 636(b)(1)] requires some lesser review by the district court when no objections are filed.").

Nevertheless, the Eighth Circuit Court of Appeals has indicated that a district court should review the portions of a magistrate judge's report and recommendation to which no objections have been made under a "clearly erroneous" standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that, when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting that the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). Review for clear error, even when no objection has been made, is also consistent with "retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk*, 15 F.3d at 815.

Although the Eighth Circuit Court of Appeals has not explained precisely what "clear error" review means in this context, in other contexts, the Supreme Court has stated that the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

I will review Judge Strand's Report And Recommendation with these standards in mind.

## B.     The Nature Of Boss's Constitutional Claims

### 1.     Boss's pertinent objections

Boss's Objection 1 and Objection 5 challenge Judge Strand's characterization of some of his allegations as separate claims of ineffective assistance of counsel. These objections require *de novo* consideration of whether Boss has asserted only one claim of ineffective assistance of counsel or more than one such claim. *See* 28 U.S.C. § 636(b)(1) (stating that, if a party files an objection to a magistrate judge's report and recommendation, the district court must "make a de novo determination *of those portions of the report or specified proposed findings or recommendations to which objection is made*" (emphasis added)); *Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any issue need only ask.").

### 2.     The underlying constitutional claims

#### a.     The claims as pleaded and briefed

In his *pro se* § 2254 Petition (docket no. 9), Boss identified Ground One for relief as "Ineffective Assistance of Counsel:  The appellant was denied the effective assistance of counsel by counsel's disclosure, during a bond review hearing, of the

location of the body of the deceased." *Pro Se* § 2254 Petition at 7.  Boss then alleged the following supporting facts:

> My attorney insisted I disclose the location of the deceased so he could have a decent burial, puls [sic] he wanted to "beat" my wife "to the punch".  This is no trial strategy.  In my P.C.R. hearing he said it was to show my wife was there and to prove it there would be cigarette butts buried with her DNA on them.  My attorney knew nothing of the cigarette butts, the first person I told was a jailor and this was three days after they unearthed the deceased.  If this was his trial strategy my attorney would have had them looking for the cigarette butts not the jailor!

*Pro Se* § 2254 Petition at 7.  In his Merits Brief (docket no. 44-1), prepared with the assistance of counsel, however, Boss characterized this underlying constitutional claim for relief somewhat differently.  He described his claim as "ineffective counsel based upon trial counsel's recommendation to disclose [the] location of [the] body during a bond hearing."  Petitioner's Merit's Brief at 3.  Thus, the thrust of Boss's constitutional claim in his *pro se* pleading was counsel's *disclosure* of the location of the body, but the thrust of his constitutional claim in his Merits Brief was counsel's *recommendation to disclose* the location of the body.

### b.  Judge Strand's interpretations

Judge Strand understood Boss's underlying constitutional claim to allege ineffective assistance of counsel in two respects:  (1) "based on his attorney's advice to disclose the location of the body," and (2) "allegedly-inadequate consultation by his attorney prior to Boss giving consent."  Report And Recommendation at 5-6.  Judge Strand's further analysis of these two aspects of ineffective assistance of counsel indicates that he understood the first aspect to relate to whether the disclosure itself was deficient performance, focusing on whether there was a reasonable trial strategy behind the disclosure, *see id.* at 15-17, while he understood the second aspect to relate to the

31

adequacy of trial counsel's counseling of Boss concerning the disclosure, focusing on the adequacy of trial counsel's consultation with Boss to obtain Boss's informed consent to the disclosure, *see id.* at 18-21. Thus, Judge Strand's identification of these two aspects of Boss's underlying constitutional claim is consistent with Boss's *pro se* pleading and his counsel's Merits Briefing, respectively. Although Judge Strand expressed "some doubt" that a claim of "inadequate consultation" about disclosure of the location of the body "before consent" had been preserved, *see id.* at 18 n.5, he nevertheless proceeded with his analysis of the merits of what he understood to be a claim of ineffective assistance of counsel concerning consultation with Boss about disclosure of the location of the body, separate from a claim of ineffective assistance of counsel concerning the actual disclosure of the location of the body, *see id.* at 18-21. Judge Strand also treated as separate—and meritless—claims in Boss's Merits Brief that his trial counsel was ineffective for stating during the bond hearing that "'the Fifth Amendment is to protect the guilty as well as the innocent'" and for "failing to advance the 'blame Lisa' theory during that hearing." *Id.* at 6 n.1.

### 3. *Analysis of Boss's objections to the nature of his constitutional claims*

#### a. *Boss's Objection 1*

Boss's Objection 1 to the Report And Recommendation is the following: "Mr. Boss objects to footnote 1 on page 6: These two examples are illustrations of the ineffective assistance of counsel to disclose the body during the bond hearing, and are not separate issues as raised." Petitioner's Objections (docket no. 66-1) at 2. Boss's Objection 5 is that "the informed consent issue is one and the same as the disclosure of the body issue," and challenges Judge Strand's concern that this issue may not have been preserved for federal *habeas* review.

In a recent ruling on a federal capital defendant's § 2255 motion, I recognized the difficulty of determining whether "ostensibly separate claims of ineffective assistance are really different facets of the *same* claim of ineffective assistance of counsel, such that they may properly be considered in the aggregate to determine whether deficiencies of counsel found by the reviewing court caused sufficient prejudice to warrant relief, without violating the Eighth Circuit rule against relief based on cumulative error of counsel." *See Johnson v. United States*, 860 F. Supp. 2d 663, 751 (N.D. Iowa 2012) (emphasis in the original). I reasoned that "allegations of errors by counsel in a particular phase of the trial may present a single, multifaceted claim of ineffective assistance, rather than multiple claims of ineffective assistance," but "a multifaceted claim involving allegations of *errors of the same kind in the same phase* is distinguishable from a multifaceted claim involving allegations of *errors of a different kind in the same phase*." *Id*. at 764 (emphasis in the original). Ultimately, I concluded,

> I believe that it is proper to consider as a single, multifaceted claim of ineffective assistance of counsel multiple, related allegations of errors. Sufficient "relatedness" is demonstrated by factors including the following: whether the errors are relevant to the same issue; whether the errors involve the same kind of conduct; whether the errors involve counsel acting in the same role; whether the errors involve the same skill of counsel; and whether the errors are in the same phase of the trial.

*Johnson*, 860 F. Supp. 2d at 765.

Here, upon *de novo* consideration of the nature of Boss's claims, in light of his objections to Judge Strand's interpretation of his claims, I readily agree with Judge Strand that Boss has asserted two *separate* constitutional claims of ineffective assistance of counsel: (1) a claim that counsel provided ineffective assistance in disclosing the location of the body *at all*, and (2) a claim that counsel provided ineffective assistance

in advising Boss concerning whether or not to disclose the location of the body. These claims are relevant to essentially the same issue, disclosure of the location of the body, and they involve errors in the same phase of the trial, pretrial proceedings (and, more particularly, the bond hearing), but there the "relatedness" of the claims ends. *Id.* The two claims involve different kinds of conduct of counsel: *disclosure* of potentially harmful evidence as a matter of trial or case strategy, on the one hand, and *counseling* of a client concerning a matter of trial or case strategy to obtain the client's consent, on the other. *Id.* They also involve counsel acting in different roles: *as a trial or case strategist*, on the one hand, and *as a counselor to the client*, on the other. Similarly, these two claims involve different skills of counsel, *trial advocacy* on the one hand, and *client counseling*, on the other. *Id.* I find no error in Judge Strand's treatment of these two aspects of ineffective assistance of counsel as *separate* claims, not as facets of the *same* claim. To this extent, Boss's Objection 5 is overruled.

### b.    *Boss's Objection 5*

In his Objection 5, however, Boss also objects to Judge Strand's statement of doubts that Boss had exhausted his claim that counsel was ineffective in consulting with him or counseling him prior to obtaining his consent to disclosure of the location of the body. Despite Judge Strand's concern that this claim might not have been exhausted, Judge Strand considered and denied that claim on the merits. *See* Report And Recommendation at 18-21. Judge Strand was permitted to do so pursuant to 28 U.S.C. § 2254(b)(2), which provides, "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Because Boss's Objection 5 invokes my *de novo* review of the exhaustion issue, however, I will consider, below, whether I must consider this claim to be "adjudicated on the merits" within the meaning of

§ 2254(d), such that I can grant relief on it on the merits, if I determine that relief on the claim is appropriate. *See, infra* at § II.C.1.b., beginning on page 38.

As to Boss's Objection 1, I agree with Boss that his complaints that his trial counsel stated, during the bond hearing, that "'the Fifth Amendment is to protect the guilty as well as the innocent'" and that his trial counsel "fail[ed] to advance the 'blame Lisa' theory during that hearing" are intended to be and should be treated only as illustrations of deficient performance and prejudice, not as separate claims of ineffective assistance of counsel. In his Merits Brief (docket no. 44-1), Boss used his trial counsel's statement that "[t]he Fifth Amendment is to protect the guilty as well as the innocent" and his failure to use the disclosure of the location of the body at the bond hearing to "blame Lisa" to illustrate that his trial counsel performed deficiently, because of the prejudice caused by his disclosure of the location of the body, his lack of preparation to address the Fifth Amendment consequences of that disclosure, and his failure to advise Boss adequately concerning Fifth Amendment and other consequences of the disclosure. *See* Petitioner's Merits Brief at 30-31 (describing the Fifth Amendment comment and the failure to "blame Lisa" after incriminating his client as "self-inflicted damage"). Therefore, Boss's Objection 1 is sustained, and I will treat these allegations only as evidence supporting Boss's claims of ineffective assistance of counsel in disclosing the location of the body and advising Boss concerning disclosure of the location of the body, not as separate claims of ineffective assistance of counsel.

### C. The Nature Of Boss's Federal Habeas Claims

Neither Boss nor the respondent levels any objections specifically at Judge Strand's characterization of Boss's claims for federal *habeas* relief, as distinct from his underlying constitutional claims. Nevertheless, I believe that *de novo* review of other portions of the Report And Recommendation, to which Boss and the respondent do

object, will be facilitated if I consider the nature of Boss's claims for federal *habeas* relief. In doing so, I will first consider the standards for federal *habeas* relief from a state conviction.

### 1. *Federal* habeas *review of a state conviction*

#### a. *"Exhausted" and "adjudicated" claims*

Review by the federal courts of a state court conviction and the state courts' denial of post-conviction relief is limited and, at least ordinarily, deferential. The ability of the federal courts to grant such relief depends, in the first instance, on whether or not the claim before the federal court has been "exhausted" in the state courts, then on the nature of the alleged error by the state courts.

More specifically, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that federal *habeas* relief cannot be granted to a person in state custody, unless it appears that "the applicant has exhausted the remedies available in the courts of the State," or "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). As mentioned above, a federal court has the authority to *deny relief on the merits* on an unexhausted claim, *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."), but it cannot *grant relief* on such a claim. *Id*. at § 2254(b)(1). There is no dispute that Boss has exhausted his claim that his counsel provided ineffective assistance in disclosing the location of the body. Any failure to exhaust his claim that his counsel provided ineffective assistance in counseling Boss to agree to the disclosure will only become an issue, if that claim cannot be denied on the merits. *See* 28 U.S.C. § 2254(b) (allowing denial of an unexhausted claim on the merits, but not allowing relief on such a claim). I will explain below, in the next subsection, why I

conclude that I must presume that the state court denied this claim, as well, so that I may consider it on the merits, but first I will summarize the circumstances under which federal courts may grant relief on exhausted claims.

As the Supreme Court recently explained, the power of the federal court to grant relief to a person in state custody on a properly exhausted claim is also limited:

> The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) restricts the circumstances under which a federal habeas court may grant relief to a state prisoner whose claim has already been "adjudicated on the merits in State court." 28 U.S.C. § 2254(d). Specifically, if a claim has been "adjudicated on the merits in State court," a federal habeas court may not grant relief unless "the adjudication of the claim—
>
>> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Ibid.*
>
> Because the requirements of § 2254(d) are difficult to meet, it is important whether a federal claim was "adjudicated on the merits in State court."

*Johnson v. Williams*, ___ U.S. ___, ___, 133 S. Ct. 1088, 1091 (2013). This is a "difficult to meet . . . and highly deferential standard." *Cullen v. Pinholster*, 563 U.S. ___, ___, 131 S.Ct. 1388, 1398 (2011) (internal quotation marks omitted). This highly deferential standard is appropriate, "because the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*,

___ U.S. ___, ___, 132 S. Ct. 38, 43 (2011) (internal quotation marks and citations omitted).

### b.      The "adjudicated on the merits" requirement

As to the "adjudicated on the merits" requirement, the Supreme Court has held "that, when a state court issues an order that summarily rejects without discussion *all* the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." *Johnson*, ___ U.S. at ___, 1333 S. Ct. at 1091 (emphasis in the original) (citing *Harrington v. Richter*, 562 U.S. ––––, 131 S. Ct. 770 (2011)). Similarly, "when a defendant convicted in state court attempts to raise a federal claim, either on direct appeal or in a collateral state proceeding, and a state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the federal claim in question," the Supreme Court has held "that the federal claim at issue . . . must be presumed to have been adjudicated on the merits by the [state] courts," and that, if the presumption is not adequately rebutted, "the restrictive standard of review set out in § 2254(d)(2) consequently applies." *Id.* at 1091-92.

There is no dispute that the Iowa courts addressed Boss's ineffective assistance of counsel claim based on disclosure of the location of the body and expressly denied relief on that claim. Upon *de novo* review of the Report And Recommendation, prompted by Boss's Objection 1, however, I part company with Judge Strand on whether or not Boss's claim that his counsel was ineffective in consulting with him concerning whether or not to consent to the disclosure of the location of the body was also "adjudicated on the merits," and, therefore, exhausted. Although Judge Strand doubted that this claim was exhausted, I conclude that I must *presume* that the claim was adjudicated and exhausted.

Part of the decision of the Iowa Court of Appeals on Boss's denial of his state petition for post-conviction relief stated as follows:

> Boss further asserts the disclosure "raises serious questions concerning disclosure of privileged communications." *The record shows that defense counsel had Boss disclose the location of the body only with his informed consent. There was discussion about the disclosure but there was no disclosure until the final agreement by Boss. Boss acknowledged considerable discussion and acknowledged eventually being convinced. He conceded consenting to the disclosure based on the advice of counsel, even though he now claims to have doubted the rationale.* Boss's citation to *State v. Wemark*, 602 N.W.2d 810 (Iowa 1999), is inapposite. In *Wemark*, counsel's tactical decisions were based on a faulty premise that disclosure was required under the Iowa Code of Professional Responsibility in effect at the time. *See Wemark*, 602 N.W.2d at 816–17 (discussing the relevant ethical and legal obligations and counsel's mistake). "Wemark was informed by his defense counsel that the location of the knife must be disclosed, and tactics were developed as a means to deal with the disclosure." *Id*. at 817. In the case before us, however, counsel correctly understood the relevant law and ethical rules. *Disclosure was a voluntary, informed, considered, tactical action. We conclude the disclosure of the location of the body was not ineffective assistance. See Ledezma*, 626 N.W.2d at 145 (disposing of an ineffective-assistance claim upon lack of proof of either prong).

*Boss*, 789 N.W.2d 165, 2010 WL 3155198 at *3 (emphasis added). Thus, the Iowa Court of Appeals was plainly aware that Boss's challenge to his counsel's conduct involved, at least in part, the adequacy of counsel's consultation with him leading to his consent to the disclosure. To the extent that the Iowa Court of Appeals did not actually and expressly deny that claim, the Iowa Court of Appeals must certainly be presumed to have denied that claim, that presumption has not been rebutted, and I may address

that claim on the merits. *See Johnson*, ___ U.S. at ___, 1333 S. Ct. at 1091-92 (explaining that, "when a defendant convicted in state court attempts to raise a federal claim, either on direct appeal or in a collateral state proceeding, and a state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the federal claim in question . . . the federal claim at issue . . . must be presumed to have been adjudicated on the merits by the [state] courts," and that, if the presumption is not adequately rebutted, "the restrictive standard of review set out in § 2254(d)(2) consequently applies"). To this extent, Boss's Objection 5 is sustained.

I will explore, next, the specific circumstances identified in the statute in which a federal court can grant *habeas* relief to a state prisoner on a claim that was or that must be presumed to be "adjudicated on the merits."

### c.      The § 2254(d)(1) standards

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, ___ U.S. at ___, 131 S. Ct. at 1398. The Supreme Court has also explained that, as a consequence of the limitations on relief under § 2254(d)(1), "[t]he starting point for cases subject to § 2254(d)(1) is to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." *Marshall v. Rodgers*, ___ U.S. ___, ___, 133 S. Ct. 1446, 1449 (2013); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). "Clearly established law" means "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" *Howes v.* Fields, ___ U.S. ___, ___, 132 S. Ct. 1181, 1187 (2012) (quoting *Williams*, 529 U.S. at 412)). Similarly, circuit precedent cannot be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme Court] has not announced." *Marshall*, ___ U.S. at ___, 133 S. Ct. at 1450

(citing *Parker v. Matthews*, 567 U.S. ___, ___, 132 S. Ct. 2148, 2155 (2012) (*per curiam*)).[2]

The next step for the federal *habeas* court under § 2254(d)(1) is to "'determine what arguments or theories supported . . . the state court's decision; and then [the federal court] must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court].'" *Wetzel v. Lambert*, ___ U.S. ___, ___, 132 S. Ct. 1195, 1198 (2012) (quoting *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011)).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Therefore, I will briefly summarize the "independent meaning" of each of these clauses authorizing federal *habeas* relief.

### i.  The "contrary to" clause

A state court decision is "contrary to" clearly established federal law, within the meaning of § 2254(d)(1), "if the state court 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases.'" *Lafler v. Cooper*, ___ U.S. ___, ___, 132 S. Ct. 1376, 1390 (2012) (quoting *Williams*, 529 U.S. at 405)). "A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 406. A federal court's belief that it might have

---

[2] In *Marshall*, the Supreme Court also explained, "Although an appellate panel may, in accordance with its usual law-of-the-circuit procedures, look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent, it may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to this Court, be accepted as correct." ___ U.S. at ___, 133 S. Ct. at 1450 (internal citations omitted).

reached a different result is not enough to show that the state court decision was "contrary to" established federal law, where the state court applied the correct standard under established Supreme Court law. *Id.*

### ii.    The "unreasonable application" clause

A state court's decision involves an "unreasonable application" of federal law, within the meaning of § 2254(d)(1), if "'there was no reasonable basis for' the [state court's] decision. *Cullen*, ___ U.S. at ___, 131 S. Ct. at 1402 (quoting *Richter*, 562 U.S. at ___, 131 S. Ct. at 786). Thus, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Richter*, 562 U.S. at ___, 131 S. Ct. at 785 (emphasis in the original) (quoting *Williams*, 529 U.S. at 410).

> [T]his Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." [*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)]. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. ----, ----, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Richter*, 562 U.S. at ___, 131 S. Ct. at 786. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

### d.    The § 2254(d)(2) standard

Just as the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have "independent meaning," *see Williams*, 529 U.S. at 405, the "unreasonable determination" clause of § 2254(d)(2) also involves separate considerations, related not to established federal law, but to sufficiency of the evidence. Section 2254(d)(2) provides for relief from a state court denial of post-conviction relief,

if the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Again, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (applying this question to both the "unreasonable application" clause in § 2254(d)(1) and the "unreasonable determination" clause in § 2254(d)(2)). Thus, the federal court must "presume the [state] court's factual findings to be sound unless [the petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)). "The standard is demanding but not insatiable; as [the Court] said . . . , '[d]eference does not by definition preclude relief.'" *Id.* (quoting its prior decision in the same case, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

### e.   *The effect of deficiencies in the state court decision*

In his original Merits Brief, Boss contended that, if I find that the state court decision was "contrary to" or an "unreasonable application of" federal law, then he is necessarily entitled to a new trial. Petitioner's Merits Brief (docket no. 44) at 2 (arguing that the state court proceedings "resulted in a decision that was 'contrary to' and an unreasonable application of <u>Strickland v. Washington</u>" and "[f]or this ground alone, this Court should grant a new trial"). He is wrong.

Even if a petitioner establishes that the state court's determination was "contrary to" or an "unreasonable application of" federal law, that determination does not, standing alone, entitle the petitioner to relief, it only entitles the petitioner to *de novo* consideration by the federal court of his or her *underlying constitutional claim* for post-conviction or *habeas* relief. *See Johnson*, ___ U.S. at ___, 133 S. Ct. at 1097 ("Even while leaving 'primary responsibility' for adjudicating federal claims to the States,

AEDPA permits de novo review in those rare cases when a state court decides a federal claim in a way that is 'contrary to' clearly established Supreme Court precedent." (internal citations omitted)); *Lafler*, ___ U.S. at ___, 132 S. Ct. at 1390-91 (holding that, where the state court's decision was "contrary to" clearly established federal law, because it failed to apply the *Strickland* standards to an ineffective assistance of counsel claim, the federal court "can determine the principles necessary to grant relief" and apply them to the facts of the case); *Richter*, ___ U.S. at ___, 131 S. Ct. at 770 (stating that § 2254(d)(1)'s exception "permit[s] relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law"); *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (stating that, when the state court's adjudication was "contrary to" Federal law, within the meaning of § 2254(d)(1), "[a] federal court must then resolve the claim without the deference AEDPA otherwise requires"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (performing the analysis required under *Strickland*'s second prong without deferring to the state court's decision, because the state court's resolution of *Strickland*'s first prong involved an "unreasonable application" of law, and the state court had considered the first prong dispositive).

### *f.* **De novo *review of issues not reached by the state court***

A federal court may also review *de novo* an element of a state prisoner's constitutional claim that the state court did not reach at all, because the state court found another element to be dispositive of the prisoner's claim. *See Porter v. McCuollum*, 558 U.S. 30, 38 (2009) (stating, "Because the state court did not decide whether Porter's counsel was deficient, we review *this element* of Porter's *Strickland* claim *de novo*," and also finding that the state court's determination that there was no prejudice was an unreasonable application of *Strickland* (emphasis added)); *Cone v. Bell*, 556 U.S. 449, 472 (2009) (reviewing *de novo* the state prisoner's *Brady* claim,

because the state courts did not reach the merits of that claim); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice, App. 265, 272–273, and so we examine this element of the *Strickland* claim *de novo*."); *Wiggins*, 539 U.S. at 534 ("In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence. In this case, our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis.").

## 2. *Boss's federal* habeas *claims*

As explained above, when a state prisoner seeks post-conviction relief from a federal *habeas* court, the question is not whether his constitutional claim is meritorious, notwithstanding the denial of that claim by the state courts, but whether the state courts' denial is deficient in one of the respects identified in § 2254(d). Thus, I must determine whether the state courts committed any errors identified in § 2254(d) in disposing of Boss's underlying constitutional claim of ineffective assistance of counsel.

In his Analysis in his Merits Brief, Boss initially stated his claim for federal *habeas* relief, as "[t]he Iowa Court of Appeals *unreasonably applied* Strickland v. Washington in failing to find that trial counsel rendered ineffective assistance of counsel when he made a surprise disclosure during a routine bond hearing about the location of Timothy Boss," *i.e.*, he invoked only the "unreasonable application of" clause of § 2254(d)(1). Petitioner's Merits Brief at 9 (emphasis added). He then clarified (or modified) his claim later in his Merits Brief by asserting that the "'contrary to' [clause of § 2254(d)(1)] applies to this claim," because "[t]he Iowa Court of Appeals and the Iowa District Court applied the wrong prejudice standard under Strickland," *id*. at 20, and that "[t]he [Iowa] Court of Appeals and [Iowa] District Court unreasonably applied Strickland deficient performance." *Id*. at 23. Thus, it appears from these allegations

that Boss's claim for federal *habeas* relief is premised on the "contrary to" and the "unreasonable application of" clauses of § 2254(d)(1) as to certain aspects of his underlying constitutional claims.

There are, however, hints that Boss may also have intended to premise his claim for federal *habeas* relief on the "unreasonable determination" clause of § 2254(d)(2). Specifically, he argues, "The bond hearing transcript demonstrates beyond all doubt that this disclosure [of the location of the body] was neither carefully prepared, well thought [out] nor was Boss advised of the 5th Amendment repercussions of disclosure." *Id*. at 29. He also argues, "Even more unreasonably, the Iowa Court of Appeals credited the 'blame Lisa' strategy, even when Williams testified it was not even his primary motivation in disclosing the location of the body." *Id*. at 31. These arguments challenge the reasonableness of factual determinations in light of the evidence, not on the ground that *Strickland* would have required a different application of the standards to the facts. *See* 28 U.S.C. § 2254(d)(2) (providing for federal relief from a state court denial of post-conviction relief, if the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding").

Upon *de novo* review of any other objections, I will treat Boss's claims for federal *habeas* relief as involving the "contrary to" or the "unreasonable application of" clauses of § 2254(d)(1) and the "unreasonable determination" clause of § 2254(d)(2), as I have construed Boss's federal *habeas* claims above.


### D. *Boss's Objections To The Disposition Of His Claims*

Boss's second, third, and fourth objections to Judge Strand's Report And Recommendation all relate to Judge Strand's analysis of his claims for federal *habeas* relief. Before considering these objections separately, I must first summarize the

prongs of a claim of ineffective assistance of counsel under *Strickland*, because, at least in the analysis of objections based § 2254(d)(1) standards for federal *habeas* relief, my "starting point . . . is to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." *Marshall*, ___ U.S. at ___, 133 S. Ct. at 1449 (explaining that this is the starting point for cases subject to § 2254(d)(1)); *Williams v*, 529 U.S. at 412 (same); *Knowles*, 556 U.S. at 122 (same).

### 1. *"Clearly established federal law" for "ineffective assistance" claims*

In the context of a claim of ineffective assistance of counsel, the Supreme Court has concluded that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams*, 529 U.S. at 391. The Supreme Court has explained that "[t]he right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, ___ U.S. ___, ___, 132 S. Ct. 1399, 1404 (2012) (citing *Strickland*, 466 U.S. at 686).

More specifically, "[t]o prevail on [an ineffective assistance of counsel] claim, [the petitioner] must meet both the deficient performance and prejudice prongs of *Strickland*, 466 U.S. at 686, 104 S. Ct. 2052." *Wong v. Belmontes*, 558 U.S. 15, 16 (2009) (*per curiam*). As the Supreme Court recently explained,

> We have recently reiterated that "'[s]urmounting *Strickland*'s high bar is never an easy task.'" *Richter, supra*, at ----, 131 S.Ct., at 788 (quoting *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1484, 176 L.Ed.2d 284, (2010)). The *Strickland* standard must be applied with "scrupulous care." *Richter*, supra, at ----, 131 S.Ct., at 788.

*Cullen*, ___ U.S. at ___, 131 S. Ct. at 1408. I will consider in more detail the two prongs of such a claim under *Strickland*.

Before doing so, however, I also note that the Supreme Court does not necessarily require consideration of *both* prongs in every case, nor does it require that the prongs of the *Strickland* analysis be considered in a specific order. As the Court explained in *Strickland*,

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, *there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.* In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697 (emphasis added).[3]

---

[3] Although the Court in *Strickland* found that it was only necessary to consider the "prejudice" prong, so that it did not reach the "deficient performance" prong, the Eighth Circuit Court of Appeals has repeatedly held that it need not consider the "prejudice" prong, if it determines that there was no "deficient performance." *See, e.g., Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) ("'We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies.'" (quoting *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002), in turn citing *Strickland*, 466 U.S. at 697)); *Ringo v. Roper*, 472 F.3d 1001, 1008 (8th Cir. 2007) ("Because we believe that the Missouri Supreme Court did not unreasonably apply *Strickland* when it determined that counsel's decision not to call Dr. Draper fell within the wide range of reasonable professional assistance, we need not consider whether counsel's decision prejudiced Mr. Ringo's case."); *Osborne v. Purkett*, 411 F.3d 911, 918 (8th Cir. 2005) ("Because Osborne did not satisfy the performance test, we need not consider the prejudice test.").

### a. *Strickland's "deficient performance" prong*

"The performance prong of *Strickland* requires a defendant to show '"that counsel's representation fell below an objective standard of reasonableness."'" *Lafler*, ___ U.S. at ___, 132 S. Ct. at 1384 (quoting *Hill v. Lockart*, 474 U.S. 52, 57 (1985), in turn quoting *Strickland*, 466 U.S. at 688); *Richter*, ___ U.S. at ___, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 688). To put it another way, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Richter*, ___ U.S. at ___, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 687)).

In evaluating counsel's performance, the reviewing court must not overlook "'the constitutionally protected independence of counsel and . . . the wide latitude counsel must have in making tactical decisions.'" *Cullen*, ___ U.S. at ___, 131 S. Ct. at 1406 (quoting *Strickland*, 466 U.S. at 589). Thus,

> [b]eyond the general requirement of reasonableness, "specific guidelines are not appropriate." [*Strickland*, 466 U.S.], at 688, 104 S.Ct. 2052. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions ...." *Id.*, at 688–689, 104 S.Ct. 2052. *Strickland* itself rejected the notion that the same investigation will be required in every case. *Id.*, at 691, 104 S.Ct. 2052 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" (emphasis added)). It is "[r]are" that constitutionally competent representation will require "any one technique or approach." *Richter*, 562 U.S., at ––––, 131 S.Ct., at 779.

*Cullen*, ___ U.S. at ___, 131 S. Ct. at 1406-07.

The *Strickland* standard of granting latitude to counsel also requires that counsel's decisions must be reviewed in the context in which they were made, without

"the distortions and imbalance that can inhere in a hindsight perspective." *Premo v. Moore*, ___ U.S. ___, ___, 131 S. Ct. 733, 741 (2011); *see also id.* at 745 (reiterating that "hindsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predictions of how the trial would proceed" (citing *Richter*, ___ U.S. at ___, 131 S. Ct. 770)); *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) ("In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made, 466 U.S., at 689, 104 S.Ct. 2052, and by giving a 'heavy measure of deference to counsel's judgments,' *id.*, at 691, 104 S.Ct. 2052."). This is so, because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge," and because "[i]t is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Richter*, ___ U.S. at ___, 131 S. Ct. at 788 (quoting *Strickland*, 466 U.S. at 689, and also citing *Bell v. Cone*, 535 U.S. 685, 702 (2002), and *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In short, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting *Strickland*, 466 U.S. at 690).

Furthermore,

> *Strickland* specifically commands that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." 466 U.S., at 689–690, 104 S.Ct. 2052. The [reviewing court] [i]s required not simply to "give [the] attorneys the benefit of the doubt," but to affirmatively entertain the range of possible "reasons [trial] counsel may have had for proceeding as they did."

*Cullen*, ___ U.S. at ___, 131 S. Ct. at 1407 (internal citations to the lower court opinion omitted); *Richter*, ___ U.S. at ___, 131 S. Ct. at 787 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range" of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)).

### b.    Strickland*'s "prejudice" prong*

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, ___ U.S. at ___, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). The Court has explained more specifically what a "reasonable probability" means:

> "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Strickland*, 466 U.S. at 694]. That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 562 U.S., at ----, 131 S.Ct., at 791.

*Cullen*, ___ U.S. at ___, 131 S. Ct. at 1403. Ultimately, a showing of "prejudice" requires counsel's errors to be "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, ___ U.S. at ___, 131 S. Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687).

Where a petitioner asserts that counsel's ineffective assistance concerned advice about whether or not to do something as a matter of strategy—such as whether to accept or to reject a plea offer—the Supreme Court has framed the test for "prejudice" as whether the outcome—the decision to accept or reject a plea offer—"would have been different with competent advice." *Lafler*, ___ U.S. at ___, 132 S. Ct. at 1384 (considering a claim of ineffective assistance of counsel in giving advice in the context of plea negotiations, and explaining that, in this context, "a defendant must show the

outcome of *the plea process* would have been different with competent advice" (emphasis added)). More specifically still, in *Lafler*, where the petitioner asserted that deficient advice led him to reject a plea offer, he was required to "show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id*. at ___, 132 S. Ct. at 1384-85. In other words, the "probability of a different outcome" must be considered in the context of the specific errors of counsel alleged.[4] It is only when the allegedly deficient performance

---

[4] The Supreme Court has repeatedly identified context-specific formulations of prejudice. *See Frye*, ___ U.S. at ___, 132 S. Ct. at 1409-10 ("In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial,'" quoting *Hill*, 474 U.S. at 59, *but* holding that "where a defendant pleads guilty to less favorable terms and claims that ineffective assistance of counsel caused him to miss out on a more favorable earlier plea offer, *Strickland*'s inquiry into whether 'the result of the proceeding would have been different,' 466 U.S., at 694, 104 S.Ct. 2052, requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed"); *Cullen*, ___ U.S. at ___, 131 S. Ct. at 1408 (considering a claim of ineffective assistance in the penalty phase of capital proceedings, and explaining that the "prejudice" question was "'whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death'" (quoting *Strickland*, 466 U.S. at 695)); *Hill*, 474 U.S. at 59 (considering a claim of ineffective assistance in the plea process and explaining, "The . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome *of the plea process*" (emphasis added)).

concerns the evidence that defense counsel should have developed and presented, or should *not* have developed and presented, that the ultimate outcome of the proceedings, that is, the conviction or the sentence, is the "outcome of the proceedings" at issue, and only then that "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695.[5]

Thus, in this case, where one of Boss's ineffective assistance claims is that his trial counsel performed deficiently in advising him to disclose the location of the murdered child's body, the "reasonable probability of a different outcome" standard for that claim requires him to show that there is a reasonable probability that, with competent advice, he would have decided *not* to disclose the location of the body. *Cf. Lafler*, ___ U.S. at ___, 132 S. Ct. at 1384 (considering prejudice on a claim of

---

[5] In *Strickland*, the Supreme Court also made clear that the context of counsel's errors matters to the assessment of prejudice, as to whether the "probability of a different outcome" relates to the conviction or to the sentence, as follows:

> The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors. *When a defendant challenges a conviction*, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. *When a defendant challenges a death sentence* such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. . . .

*Strickland*, 466 U.S. at 695.

ineffective assistance based on counsel's allegedly deficient advice concerning the plea process in terms of whether "the outcome of the plea process would have been different with competent advice"). On the other hand, for Boss's other claim of ineffective assistance of counsel, alleging that counsel was ineffective in disclosing the location of the murdered child's body *at all*, which relates to the evidence that counsel chose to admit in the proceedings, the "reasonable probability of a different outcome" standard requires Boss to show that there is a reasonable probability that he would not have been convicted, and that determination must be made considering "the totality of the evidence before the judge or jury." *Cf. Strickland*, 466 U.S. at 695.

Boss's objections to the recommended disposition of his ineffective assistance claims do not challenge the conclusion that *Strickland* states "clearly established Federal law." Rather, they concern the second and third steps in the § 2254(d) analysis, "'determin[ation of] what arguments or theories supported . . . the state court's decision; and then [determination of] whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court].'" *Wetzel*, ___ U.S. at ___, 132 S. Ct. at 1198 (quoting *Richter*, 562 U.S. at ___, 131 S.Ct. at 786).

### 2. *The rationale for the state court's decision*

The remainder of Boss's objections all relate to Judge Strand's consideration of the rationale of the state courts for their denial of Boss's ineffective assistance claims. In his Objection 2, Boss asserts that Judge Strand failed to find that the Iowa Court of Appeals and the Iowa District Court applied the wrong standard of proof to "prejudice" under *Strickland*. In his Objection 3, he asserts that Judge Strand failed to apply *de novo* review to the "deficient performance" and "prejudice" prongs of the analysis of ineffective assistance of counsel. In his Objection 4, he asserts that Judge Strand erred in failing to find that the Iowa courts' determination that there was no "deficient

performance" was both "contrary to" and an "unreasonable application" of clearly established federal law. I will consider each of these objections to Judge Strand's review of the rationale for the state court decisions denying Boss post-conviction relief, although not in the order that Boss asserts them. Rather, because I conclude that this is a case in which the "performance" prong under *Strickland* is dispositive of Boss's "ineffective assistance" claim, I will begin with Boss's objections to the determinations on the "performance" prong by both Judge Strand and the state courts. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

### a.    *"Deficient performance"*

### i.    *Boss's Objection 3 as to "performance"*

Part of Boss's Objection 3 is that a *de novo* standard of review applies to the "deficient performance" prong of his ineffective assistance claim, as well as to the "prejudice" prong, because the Iowa Court of Appeals clearly applied the wrong standard of proof to the "prejudice" prong. He asserts that Judge Strand did not expressly state whether he agreed that the Iowa courts used the incorrect *Strickland* standard for his claim. Rather, Judge Strand concluded that, even if the Iowa courts did get the standard wrong, applying *de novo* review, he would have found for Boss on the "prejudice" prong, but not for Boss on the deficient performance prong, applying "deferential" review. Boss argues that this was error, because "[a]ll Courts looking at this issue have applied the *de novo* standard to both prongs of *Strickland* where the state court applies the incorrect prejudice standard for *Strickland*." Petitioner's Objections at 9. In support of his contention that "all Courts" do this, he cites only my decision in *Wanatee v. Ault*, 101 F. Supp. 2d 1189, 1197 (N.D. Iowa 2000), which he contends applied *de novo* review to both prongs where the Iowa Court of Appeals applied a

patently incorrect legal standard for determination of "prejudice." He contends that Judge Strand's error led him to apply the "doubly deferential" standard of *Richter* to the "deficient performance" prong, which was not applicable, when no deference was due the Iowa Court of Appeals, and review of this prong should have been *de novo*.

Boss is wrong. First, in *Wanatee*, I did not apply *de novo* review to *both* prongs of the *Strickland* analysis, because I concluded that the Iowa Court of Appeals had applied the wrong standard to the "prejudice" prong. Indeed, in the decision in *Wanatee* that Boss cites, I considered *only* the "prejudice" prong, *see* 101 F. Supp. 2d at 1192-93 (background), 1197-98 (analysis); the references to "de novo review" initially concerned review of parts of the magistrate judge's report and recommendation to which objections had been made, *see id.* at 1194; and my conclusion that the determination by the Iowa Court of Appeals on "prejudice" was "patently contrary to" federal law was a determination under the "contrary to" clause of § 2254(d)(1), *see id.* at 1197 (also concluding that the decision of the Iowa Court of Appeals on the "deficient performance" prong had been an "unreasonable application" of *Strickland*). I then conducted a *de novo* review *only* of the "prejudice" prong. *See id.* at 1199-1214. Indeed, I had previously held, in a separate decision, that counsel's performance had been "deficient." *See Wanatee v. Ault*, 39 F. Supp. 2d 1164 (N.D. Iowa 1999) (holding that trial counsel's performance was deficient, but remanding to the magistrate judge for a hearing on the "prejudice" prong of the petitioner's ineffective assistance claim).

Second, Boss's contention is contrary to Supreme Court precedent, which explicitly applies *de novo* review *only* to the element or prong of *Strickland* that the state court unreasonably decided or did not address. Specifically, in *Wiggins v. Smith*, 539 U.S. 510 (2003), the Court concluded that the application of *Strickland* principles to the "deficient performance" prong by the Maryland Court of Appeals was

"objectively unreasonable," 539 U.S. at 527, that is, it was an "objectively unreasonable application of [Supreme Court] precedent" within the meaning of § 2254(d)(1), and an "unreasonable determination of the facts in light of the evidence presented in the State court proceedings," within the meaning of § 2254(d)(2), *id.* at 528. The Court then conducted a *de novo* review of the "deficient performance" prong. *Id.* at 529-34. The Court *also* conducted a *de novo* review of the "prejudice" prong, but not because the state court's decision was deficient under any clause of § 2254(d), but because the state court had never reached that prong of the analysis, after finding that the petitioner's failure to establish "deficient performance" was dispositive. *Id.* at 534-38; *see also Porter*, 558 U.S. at 38 (stating, "Because the state court did not decide whether Porter's counsel was deficient, we review *this element* of Porter's *Strickland* claim *de novo*," (emphasis added), and also finding that the state court's determination that there was no prejudice was an unreasonable application of *Strickland*); *Rompilla*, 545 U.S. at 390 ("Because the state courts found the representation adequate, they never reached the issue of prejudice, App. 265, 272–273, and so we examine this element of the *Strickland* claim *de novo*."). Thus, the standard of review, under § 2254, for an ineffective assistance of counsel claim is *element specific*.

Third, Boss has not cited *any* Supreme Court decision—or even any lower court decision—applying *de novo* review to *both* prongs of the *Strickland* analysis, where the state court *reached both prongs of the analysis*, but the state court's determination of *one* prong was deficient under § 2254(d). Thus, his assertion that "all Courts" consider both prongs *de novo*, if the state court applied the wrong standard to one prong, but the right standard to the other, is wholly unsupported.

Judge Strand did not err by reviewing the "deficient performance" prong of Boss's ineffective assistance claims under the "doubly deferential" standard of

*Strickland* and § 2254(d), because the state courts applied the correct standard to that prong. *See Premo v. Moore*, ___ U.S. ___, ___, 131 S. Ct. 733, 740 (2011) (explaining that federal review of a state prisoner's ineffective assistance of counsel claim is "doubly" deferential, because the federal court must apply *Strickland* deference to trial counsel's conduct and § 2254(d)(1) deference to the state court's determination that trial counsel did not perform deficiently (quoting *Richter*, ___ U.S. at ___, 131 U.S. at 778, in turn citing *Knowles*, 556 U.S. at 123)). The part of Boss's Objection 3 challenging Judge Strand's failure to apply *de novo* review to the "deficient performance" prong of his claims of ineffective assistance of counsel is overruled. I will consider the part of Boss's Objection 3 concerning whether Judge Strand improperly failed to apply *de novo* review to the "prejudice" prong of his claims, when I turn to consideration of that prong, below, in subsection b.

### ii. *Boss's Objection 4*

Boss's Objection 4 is that Judge Strand erred in failing to find that the Iowa courts' determination that there was no "deficient performance" was both "contrary to" and an "unreasonable application of" clearly established federal law. *See* Petitioner's Objections at 9. In support of this objection, Boss argues that none of the reasons proffered by his trial counsel, and found sufficient by the Iowa Court of Appeals, was legitimately strategic. He argues that concerns that Lisa could have revealed the location of the body first would be a plausible strategy only if Lisa actually buried the body, but he did not know that she had done so until after she had already killed and buried the child. He contends that revealing the location of the body without providing any narrative about how it got there, and failing to blame Lisa, provided no benefit, and allowed reasonable jurors to conclude that he was guilty of the murder, because he knew where the child was buried. He also argues that concerns about media coverage were not legitimate strategic concerns, because the media does not convict a defendant.

Moreover, he argues that revealing the location of the body did nothing to tamp down bad media coverage. Indeed, he contends that the obviously damaging results of disclosing the location of the body demonstrate why it was bad strategy.

It does not appear to me that these arguments even relate to analysis of whether the state court's determination on the "deficient performance" prong was "contrary to" or an "unreasonable application of" clearly established federal law, within the meaning of § 2254(d)(1). Boss makes no argument that the state courts "'applie[d] a rule [to deficient performance] that contradicts the governing law set forth in [Supreme Court] cases,'" *Lafler*, ___ U.S. at ___, 132 S. Ct. at 1390 (identifying a decision "contrary to" federal law (quoting *Williams*, 529 U.S. at 405)); or that, in deciding whether his trial counsel performed deficiently, "the state court[s] confront[ed] a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrive[d] at a result different from [its] precedent," *Williams*, 529 U.S. at 406 (identifying a decision that was "contrary to" federal law); or that the state court misapplied *Strickland* by "overlooking" some specific consideration pertinent to the "deficient performance" prong, *cf. Cullen*, ___ U.S. at ___, 131 S. Ct. at 1406 (explaining that an "unreasonable application of" federal law occurred when the state court misapplied *Strickland* by "overlook[ing] the constitutionally protected independence of counsel and the wide latitude counsel must have in making tactical decisions"). Rather, Boss simply asks me to reach a different result, notwithstanding that the state courts applied the correct standard to this prong under established Supreme Court law, but that is not enough for federal *habeas* relief. *Williams*, 529 U.S. at 406 (holding that a federal court's conclusion that it would reach a different result is not enough to show that a state court's determination was "contrary to" federal law, if the state court applied the correct standard).

To the extent that what Boss really complains about is a purportedly "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," within the meaning of § 2254(d)(2), once again, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473 (applying this question to both the "unreasonable application" clause in § 2254(d)(1) and the "unreasonable determination" clause in § 2254(d)(2)). Boss's present scorn for his trial counsel's decision to reveal the location of the body, based on hindsight, falls well short of overcoming the presumption of correctness of the state court's findings by clear and convincing evidence. *Miller-El*, 545 U.S. at 240 (stating that "clear and convincing evidence" is required to establish an "unreasonable determination" under § 2254(d)(2)); *see also Premo*, ___ U.S. at ___, 131 S. Ct. at 741 & 745 (rejecting using a hindsight view of counsel's performance, because of the distortions and imbalances that doing so can create, and considering whether counsel's choices were reasonable and legitimate based on predictions of how the trial would proceed, from what was known to counsel at the time the decision was made); *Rompilla*, 545 U.S. at 381 (requiring the reviewing court to consider "'counsel's perspective at the time"); *Richter*, ___ U.S. at ___, 131 S. Ct. at 788 (rejecting hindsight, because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge," and because "[i]t is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" (quoting *Strickland*, 466 U.S. at 689)).

In his Objection 4, Boss makes quite narrow factual challenges to the state courts' determinations that his trial counsel did not perform deficiently: that disclosure of the location of the body was a plausible strategy only if Lisa actually buried the

body, but he did not know that she had done so until after she had already killed and buried the child; that revealing the location of the body without providing any narrative about how it got there, and failing to blame Lisa, provided no benefit, and allowed reasonable jurors to conclude that he was guilty of the murder; and that concerns about media coverage were not legitimate strategic concerns. These challenges do not convince me that the state courts made an "unreasonable determination."

As the Iowa Court of Appeals explained,

> It is clear from the record that defense counsel was concerned that Lisa would reveal the location of the body. Counsel also was concerned about the media coverage of the case and Lisa's statements in the media. We conclude there was a rational explanation for disclosing the location of the body as quickly as possible to "beat [Lisa] to the punch." While the ultimate effect of revealing the location of Timothy's body may have been prejudicial to Boss's defense, we agree with the postconviction court that defense counsel had a "legitimate strategy in mind" that was based on extensive experience, considered deliberation, discussion with the defendant, and the unfolding circumstances as the case proceeded. This is not a failure in an essential duty. Boss has not overcome the strong presumption that his counsel's performance fell within the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689–90, 104 S.Ct. at 2065–66, 80 L.Ed.2d at 693–94.

Boss, 789 N.W.2d 165, 2010 WL 3155198 at *2 (emphasis added). In his Post-Conviction Relief Ruling, Judge Wenell made even more detailed determinations on the "deficient performance" prong, rejecting the reasonableness of several of trial counsel's purported rationales, and accepting only a few: beating Lisa to the punch, so that Boss would have the opportunity to secure a more favorable plea agreement; creating the impression that Boss was cooperating; and stopping Lisa from making incriminating statements. See, supra, beginning at page 11. Even were I inclined to make a different

determination, on the record evidence, I cannot conclude that the Iowa courts' determinations were "unreasonable," in light of the evidence before the state courts. *Schriro*, 550 U.S. at 473.

First, I conclude that Judge Wenell reasonably *rejected* several purported rationales for disclosure of the location of the body, including a belief that discovery of the body was inevitable, when at least three prior searches had failed to find it; a belief that disclosure of the body might help reduce Boss's bond; and a belief that disclosure of the body would improve publicity concerning Boss. *See* Post-Conviction Relief Ruling at 21 (Respondent's Appendix at 32). Although the Iowa Court of Appeals noted that trial counsel was concerned about media attention, as well as the possibility that Lisa would reveal the location of the body to authorities to her advantage, the Iowa Court of Appeals ultimately found only "beating Lisa to the punch" was a reasonable strategy. *Boss*, 789 N.W.2d 165, 2010 WL 3155198 at *2. Indeed, if the matter were before me in the first instance, I would also reject the same purported rationales rejected by the Iowa courts.

Second, and more importantly, I conclude that Judge Wenell and the Iowa Court of Appeals both reasonably determined, in light of record evidence, that the decision to disclose the location of the body was made after a reasonable investigation of the law and the facts. *See Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."); *and compare Wiggins*, 539 U.S. at 527 ("*Strickland* does not establish that a cursory investigation automatically justifies a tactical decision. . . . Rather, a reviewing court must consider the reasonableness of the investigation said to support that strategy."); *Armstrong v. Kemna*, 534 F.3d 857, 864-

65 (8th Cir. 2008) ("[S]trategic choices 'resulting from lack of diligence in preparation and investigation [are] not protected by the presumption in favor of counsel.'" (quoting *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir. 1991), and also citing *Wiggins*, 539 U.S. at 527). I reach this conclusion for several reasons.

First, trial counsel had consulted with other attorneys before making the decision to disclose the location of the body. This evidence in the record before the state courts and considered by those courts reasonably suggested that trial counsel engaged in a reasonable consideration or investigation of the strategy. *See Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

Second, although Boss contended that he had an agreement with Lisa that she would not reveal the location of the body, Judge Wenell reasonably determined, in light of the evidence before the state court, that there were "problems with the alleged rock-solid nature of this agreement," where Lisa had made comments to authorities and others; she was represented by separate counsel, who had not been persuaded to cooperate in a joint defense; Boss ultimately agreed to the tactic despite his purported agreement with Lisa; and Boss even admitted that the tactic worked "for a while" to make Lisa stop making comments to authorities. Post-Conviction Relief Ruling at 21-22 (Respondent's Appendix at 32-33). In light of this evidence, it was reasonable for Judge Wenell to determine that counsel did not perform deficiently in pursuing the strategy of revealing the location of the body to stop Lisa from making further comments to authorities.

Third, also contrary to Boss's contentions, trial counsel could have reasonably (although perhaps overly optimistically) believed that, even if Boss buried the body,

evidence that might be developed from the body or from the location where it was buried linking Boss's wife to the murder and to the burial might provide inferences that Boss only buried or helped to bury the body to conceal his wife's crime, not that he murdered the child. Again, trial counsel did not yet know, but had assessed, what evidence might be developed from the body and had weighed its effect in the case. *Rompilla*, 545 U.S. at 381 (emphasizing that "hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made, and by giving a 'heavy measure of deference to counsel's judgment'" (quoting *Strickland*, 466 U.S. at 689, 691); *see also Bell*, 535 U.S. at 698 (reiterating "that '[j]udicial scrutiny of a counsel's performance must be highly deferential' and that 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time'" (also quoting *Strickland*, 466 U.S. at 689)). Boss makes the hindsight complaint that none of the evidence implicating Lisa that trial counsel hoped might be found at the site of the body was actually obtained. I conclude, however, that Judge Wenell reasonably determined, based on the record evidence, that the hope of discovering helpful evidence was a reasonable basis for counsel's belief that disclosure of the location of the body might have this advantage. *Id*. at 23 (Respondent's Appendix at 34); *Boss*, 789 N.W.2d 165, 2010 WL 3155198 at *2-*3. I do so, because I am mindful that the errors alleged here occurred early in pretrial proceedings, when the Supreme Court has urged caution in reviewing the performance of counsel, because neither the prosecution nor the defense may know with much certainty what course the case may take. *See Premo*, ___ U.S. at ___, 131 S. Ct. at 742. Indeed, even if I were reviewing the matter in the first instance, I would conclude that trial counsel reasonably (although clearly overly optimistically) believed that evidence that

was more helpful than harmful to Boss's case, because it implicated Lisa, would be revealed by disclosure of the location of the body.

Fourth, the Iowa courts reasonably determined that trial counsel did not perform deficiently, where part of trial counsel's strategy in disclosing the location of the body, before Lisa did, was to obtain possible advantages in plea bargaining, even though Boss contends that such an advantage never materialized. Again, Boss's complaint is based on hindsight, which is not the appropriate perspective for review of trial counsel's performance. *See Rompilla*, 545 U.S. at 381; *Bell*, 535 U.S. at 698. Again, I agree that trial counsel could have reasonably (although perhaps overly optimistically) believed that revealing the location of the body would give Boss some advantage in plea negotiations. I am mindful, again, that the errors alleged here occurred early in pretrial proceedings, when the Supreme Court has urged caution in reviewing the performance of counsel, because neither the prosecution nor the defense may know with much certainty what course the case may take. *See Premo*, ___ U.S. at ___, 131 S. Ct. at 742. Again, if I were reviewing the matter in the first instance, I would conclude that trial counsel reasonably (albeit overly optimistically) believed that the disclosure of the location of the body would secure an advantage for Boss in plea negotiations that Lisa might otherwise seize. Excessive optimism about possible outcomes is not deficient performance, when there is a rational basis and sufficient investigation supporting counsel's decision. *See Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

There is no doubt in my mind that the strategy of disclosing the location of the body was extremely dangerous, like walking a tightrope over the Grand Canyon,

because one slip, one miscalculation, or one disappointed expectation could lead to disaster. However, neither the dangerousness of the strategy, nor its ultimate failure, necessarily makes it unreasonable, in a particular case, in the circumstances known to trial counsel at the time. To put it in Judge Wenell's words, "[t]he fact that other lawyers may have decided not to reveal [the location of the body] does not mean trial counsel was acting incompetently." *See* Post-Conviction Relief Ruling at 23 (Respondent's Appendix at 34); *and compare Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403 ("The Court acknowledged [in *Strickland*] that '[t]here are countless ways to provide effective assistance in any given case,' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" (quoting *Strickland*, 466 U.S. at 689)). Here, the state courts did not unreasonably determine that trial counsel's decision to disclose the location of the body was not deficient performance, in light of the record before the state courts.

Boss's Objection 4 also does not appear to address specifically any § 2254(d) ground for rejecting the determination of the Iowa courts concerning the adequacy of trial counsel's performance in consulting with or advising Boss before obtaining his consent to disclosure of the location of the body, considered as a separate claim of ineffective assistance of counsel. As Judge Strand pointed out, the Iowa District Court noted that trial counsel communicated to Boss that he believed that disclosing the location of the body would get Lisa to "quit talking," and that Boss agreed to the disclosure, even though Boss now contends that he believed at the time that Lisa would never disclose the location of the body, and Boss even admitted that the strategy worked for a time. *See* Report And Recommendation at 18 (citing the Iowa District Court's Post-Conviction Relief Ruling at 33). Also, as Judge Strand pointed out, the Iowa Court of Appeals found that trial counsel had considerable discussion with Boss about the reasons for disclosing the location of the body and that Boss expressly

consented to the disclosure. *Id*. (citing *Boss*, 789 N.W.2d 165, 2010 WL 3155198 at *3).

The Supreme Court has found a state court decision on an ineffective assistance of counsel claim, concerning rejection of a plea agreement, was "contrary to" clearly established federal law when the state court did not consider the "deficient performance" prong under *Strickland*, but "simply found that [the state prisoner's] rejection of the plea was knowing and voluntary." *Lafler*, ___ U.S. at ___, 132 S. Ct. at 1390. The Iowa Court of Appeals relied on more than Boss's "knowing and voluntary" disclosure of the body in this case, however, in concluding that trial counsel adequately advised Boss about disclosing the location of the body. The Iowa Court of Appeals decided this performance issue on the basis that trial counsel had obtained Boss's informed consent to a reasonable trial strategy, "*based on extensive experience, considered deliberation*, discussion with the defendant, *and the unfolding circumstances as the case proceeded.*" *Boss*, 789 N.W.2d 165, 2010 WL 3155198 at *2 (emphasis added). That determination was neither "contrary to" nor an "unreasonable application of" clearly established federal law, nor was it an "unreasonable determination" of the facts, in light of the record before the state courts, which does identify these bases for trial counsel's advice to Boss.

Thus, like Judge Strand, I find that the Iowa Court of Appeals reasonably determined that trial counsel had a reasonable strategic basis for his determination to disclose the location of the body and provided reasonably adequate advice to Boss concerning whether or not to disclose the location of the body. Boss may not have received "perfect" representation, but he did receive reasonably competent representation. *Richter*, ___ U.S. at ___, 131 S. Ct. at 791 ("*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" (quoting *Strickland*, 466 U.S. at 687 (internal quotation marks omitted)).

Boss's Objection 4 is overruled, and I accept Judge Strand's recommendation to find that the state courts' decisions on the "deficient performance" prong of Boss's ineffective assistance claims were not themselves deficient in any of the ways identified in § 2254(d). Therefore, there is no basis for this federal court to examine the "deficient performance" elements of either claim *de novo* or to grant relief on them.

### b. *"Prejudice"*

#### i. *Boss's Objection 2 and Objection 3 as to "prejudice"*

Boss's Objection 2 is that Judge Strand failed to find that the Iowa Court of Appeals and the Iowa District Court applied the wrong standard of proof on the "prejudice" prong of *Strickland*. The remaining part of Boss's Objection 3 is that Judge Strand failed to apply *de novo* review to the "prejudice" prong of the analysis of ineffective assistance of counsel. Boss argues that, contrary to Judge Strand's belief that his arguments about the burden of proof on the "prejudice" prong were "somewhat contradictory," he properly argued that the Iowa courts applied the wrong—and higher—burden of proof to the "prejudice" prong of his claims—a "preponderance of the evidence" standard instead of the *Strickland* "reasonable probability of a different outcome" standard—but he could still argue that, even under the improper, higher standard, he proved this prong in the state courts. He also argues that, because the Iowa courts applied the wrong standard to this prong, I should review it *de novo*, and join the Iowa courts and Judge Strand in concluding that counsel's performance prejudiced him. Furthermore, he argues, because I should also find "deficient performance" on *de novo* review, I should now grant him a new trial.

#### ii. *Analysis*

Because these objections invoke *de novo* review of Judge Strand's conclusions on the "prejudice" prong, *see* 28 U.S.C. § 636(b)(1); *Thomas*, 474 U.S. at 154, I will briefly make such review. On *de novo* review, I part company with Judge Strand,

because I believe that it was unnecessary to consider the "prejudice" prong *at all*, when Judge Strand had found that there was no "deficient performance." As the Supreme Court explained in *Strickland*, "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697. For this reason, I will not consider the "prejudice" prong, and I will not accept the part of Judge Strand's Report And Recommendation considering the "prejudice" prong. Here, Boss's ineffective assistance claims fail on the "deficient performance" prong, and no further analysis is required. For these reasons, Boss's Objection 2 and the remaining part of his Objection 3 are overruled.[6]

---

[6] Once Judge Strand entered into consideration of the "prejudice" prong, I believe that he should have found that the Iowa Court of Appeals *stated* an incorrect burden of proof to the "prejudice" element of Boss's ineffective assistance claims, rather than hedging on the question. *Boss*, 789 N.W.2d 165, 2010 WL 3155198 at *2 ("The defendant has the burden of proving both elements of his ineffective assistance claim by a preponderance of the evidence" (citing *Ledezma v. State*, 626 N.W.2d 134, 145 (Iowa 2001)); *and compare* Iowa District Court Post-Conviction Relief Ruling at 6 (Respondent's Appendix at 17) (stating, "An applicant for post-conviction relief has the burden of proof to establish ineffective assistance of counsel and this claim must be proven by a preponderance of the evidence," and identifying the "prejudice" prong as requiring proof that "the proceeding would have been decided differently had the error been remedied," but not specifically stating that each prong must be proved by the preponderance of the evidence). The Supreme Court has explained that a state court decision would be "contrary to" the clearly established *Strickland* standard, if the state court held "that the prisoner had not established by the preponderance of the evidence that the result of his criminal proceeding would have been different," because the Court "held in *Strickland* that the prisoner need only demonstrate a 'reasonable probability that . . . the result of the proceeding would have been different.'" *Williams*, 529 U.S. at 405-06 (quoting *Strickland*, 466 U.S. at 694).

I do not believe that the Iowa courts ever actually *applied* this standard to the "prejudice" prong, because, as I read both decisions of the Iowa courts, neither expressly found "prejudice," or assumed, for the sake of argument, that "prejudice"

### E. The Respondent's Objection To The Finding Of "Prejudice"

The respondent's sole objection to Judge Strand's Report And Recommendation was "to the findings regarding *Strickland* prejudice." Respondent's Objection at 2. Again, on *de novo* review prompted by that objection, *see* 28 U.S.C. § 636(b)(1); *Thomas*, 474 U.S. at 154, I part company with Judge Strand, because I believe that it was unnecessary to consider the "prejudice" prong *at all*, when Judge Strand found that there was no "deficient performance." *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."). Again, for this reason, I will not consider the

---

had been shown, before turning to analysis of the "deficient performance" prong. Judge Wenell stated in his Post-Conviction Relief Ruling that "it is clear the [disclosure] of a body *may have* resulted in significant prejudice at trial," but that it was "also clear that the test for ineffective assistance of counsel is a two-prong test," including deficient performance*,* Post-Conviction Relief Ruling at 18-19 (Respondent's Appendix at 29-30) (emphasis added). Observing that a petitioner "may have" been prejudiced is not a finding of "prejudice." Furthermore, Judge Wenell ultimately disposed of Boss's claim solely on the basis of a failure to prove deficient performance. *Id*. at 23 (Respondent's Appendix at 34) (explaining that the evidence of the location of the body "could have significantly changed the trial at numerous stages," but that "prejudice only becomes a factor when the legal strategy is so misguided that it cannot be truly be [sic] called a legitimate trial strategy," and concluding that there was a strategic basis for the disclosure of the location of the body, even if that strategy "backfired"). Similarly, the Iowa Court of Appeals recognized that the Iowa District Court had "observed the disclosure 'may have resulted in significant prejudice at trial,' but resolved the claim by finding the attorneys 'have shown enough evidence that they made a tactical decision in support of a legal strategy that could have been aided by the disclosure of the body.'" *Boss*, 789 N.W.2d 165, 2010 WL 3155198 at *2. The entirety of the analysis of the merits of Boss's claim by the Iowa Court of Appeals was devoted to consideration of the "performance" of counsel. *Id*. at *2-*3.

"prejudice" prong, and I will not accept the part of Judge Strand's Report And Recommendation considering the "prejudice" prong. Here, Boss's ineffective assistance claims fail on the "deficient performance" prong, and no further analysis is required. For these reasons, and to this extent, the respondent's sole objection to the Report And Recommendation is sustained.

## III. CONCLUSION

Upon the foregoing,

1.      Boss's March 11, 2013, Objections To February 19, 2013, Report and Recommendation (docket no. 66) are **sustained in part and overruled in part**, as follows:

a.      Boss's Objection 1, objecting to footnote 1 on page 6 of the Report And Recommendation on the ground that the two examples identified therein are illustrations of the ineffective assistance of counsel relating to disclosure of the location of the body during the bond hearing, and "are not separate issues as raised," is **sustained**, and I have treated the allegations in question only as evidence supporting Boss's claim of ineffective assistance of counsel in disclosing the location of the body, not as separate claims;

b.      Boss's Objection 2, objecting to Judge Strand's failure in the Report And Recommendation to find that the Iowa Court of Appeals and the Iowa District Court applied the wrong standard of proof to the "prejudice" prong under *Strickland* is **overruled** to the extent that it was unnecessary to consider the "prejudice" prong *at all*, when Judge Strand found that there was no "deficient performance"; consequently, I will not accept the part of the Report And Recommendation finding "prejudice," and I did not consider the

"prejudice" prong in my analysis, where the lack of "deficient performance" is fully dispositive of Boss's claims;

      c.     Boss's Objection 3 is

            i.     **overruled**, as without merit, to the extent that it challenges Judge Strand's failure to apply *de novo* review to the "deficient performance" prong of Boss's claims of ineffective assistance of counsel; and

            ii.     **overruled**, to the extent that it challenges Judge Strand's failure to apply *de novo* review to the "prejudice" prong of Boss's claims of ineffective assistance of counsel, because I will not accept the part of the Report And Recommendation addressing the "prejudice" prong of the analysis, and I did not consider the "prejudice" prong in my analysis, where the lack of "deficient performance" is fully dispositive of Boss's claims;

      d.     Boss's Objection 4, objecting to Judge Strand's failure to find that the Iowa courts' determination that there was no "deficient performance" was both "contrary to" and an "unreasonable application" of clearly established federal law is **overruled**, and I will accept Judge Strand's recommendation to find that the state courts' decisions finding no "deficient performance" on either of Boss's ineffective assistance claims were not deficient in any of the ways identified in § 2254(d);

      e.     Boss's Objection 5 is

            i.     **overruled** to the extent that Boss objected to Judge Strand's failure to treat "the informed consent issue" as one and the same as "the disclosure of the body issue"; and

ii.　　**sustained** to the extent that it objected to Judge Strand's concern that a claim of ineffective assistance of counsel for providing inadequate advice to obtain Boss's consent to disclosure of the location of the body may not have been preserved for federal *habeas* review, because that claim must be presumed to have been adjudicated on the merits and, thus, exhausted.

　　2.　　The respondent's March 4, 2013, Objection To Report and Recommendation On Habeas Corpus Petition (docket no. 64), challenging Judge Strand's "findings regarding *Strickland* prejudice" is **sustained**, to the extent that it was unnecessary to consider the "prejudice" prong *at all*, when Judge Strand found that there was no "deficient performance"; consequently, I will not accept the part of his Report And Recommendation finding "prejudice," and I did not consider the "prejudice" prong in my analysis, where the lack of "deficient performance" is fully dispositive of Boss's claims.

　　3.　　Magistrate Judge Leonard T. Strand's February 19, 2013, Report And Recommendation On Petition For Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (docket no. 63) is

　　　　　a.　　**accepted as modified**, to the extent that it recommends that I find that the state courts' decisions finding no "deficient performance" on either of Boss's ineffective assistance claims were not deficient in any of the ways identified in § 2254(d);

　　　　　b.　　**rejected**, to the extent that it makes any findings on or recommendations concerning the "prejudice" prong of Boss's ineffective assistance claims; and

　　　　　c.　　**accepted as modified**, to the extent that it recommends that Boss's § 2254 Petition be denied.

4.    Boss's November 15, 2010, *pro se* Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (§ 2254 Petition) (docket nos. 1 and 9), as modified and clarified with the assistance of counsel, is **denied**.

**IT IS SO ORDERED**.

**DATED** this 3rd day of May, 2013.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA